2009 VT 24

# State of Vermont v. Jonathan Sole

[974 A.2d 587]

No. 07-415

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed February 27, 2009

Motion for Reargument Denied March 27, 2009

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant entered a conditional plea of guilty to cocaine and marijuana possession after the district court denied his motion to suppress. He appeals the denial of his suppression motion here. Defendant sought to suppress statements and physical evidence gathered by a state trooper after the trooper stopped defendant for speeding, directed him into the police cruiser and questioned him about the smell of marijuana in his car, then conducted what the State maintains was a consensual search of defendant's car and his passenger's backpack. We reverse the district court's decision with respect to the statements defendant made and the physical evidence he produced in the cruiser, but affirm with respect to the search of the vehicle and the passenger's luggage.

¶ 2. Based on the district court's findings, together with the in-cruiser audio-video record of the stop as presented to the court, the relevant background is as follows. In February 2006, defendant and his passenger were traveling south on Interstate 89 near Sharon, Vermont, when a state trooper stopped defendant for traveling at a speed of ninety-five miles per hour. When the trooper approached the vehicle's open window to question defendant, the trooper noticed a strong odor of raw marijuana in the vehicle. The trooper testified that he asked defendant to exit the vehicle and sit in the police cruiser due both to the excessiveness of defendant's speed and the smell of marijuana. The trooper did not mention the marijuana smell to defendant at this time.

¶ 3. Inside the cruiser, while he processed defendant's speeding violation, the trooper informed defendant that he could arrest

defendant for such an excessive speed, but, instead, would just issue a citation. Defendant expressed relief and gratitude that the trooper was giving him "a break," but this break was short-lived. Once the ticket was written, the trooper told defendant he would not be released until the trooper determined if there was anything illegal in the car. Defendant asked if the trooper would need to search the car, and the trooper replied that he smelled marijuana in the car and asked if defendant would mind if he "took a look." When defendant asked if he had to let him search, the trooper responded, "Yeah, if there's a little bit, I can deal with it." The trooper then asked defendant if he had marijuana on his person, and in response, defendant produced some from his pocket and handed it to the trooper.

¶ 4. At this point, the trooper called on his radio for a second car to assist at the scene. The trooper then asked defendant several more questions regarding marijuana, including whether he had smoked any marijuana before he started driving. Defendant responded that he had, adding, "Now I'm definitely going down with you, huh?" The trooper told him he would still "see what [he could] deal with" and that he needed the back-up police to attend "because of the search of the car."

¶ 5. The trooper asked defendant again for consent to search the vehicle, and produced a consent form for defendant to sign. The trooper read the consent form to defendant, including the standardized text advising that the signer "freely" gives permission to the police officer "to conduct a complete search" of the vehicle and "its contents . . . under [his] control." The form also states that the signer understands that he "[does] not have to allow this" and that "[n]o threats or promises have forced this consent."

¶ 6. Told again that he could not be forced to let the trooper into the car, defendant was reluctant to agree, and asked for confirmation that the trooper could not search if defendant did not sign the form. The trooper responded that he had reason to believe there was contraband in the car and that he could get a search warrant if defendant did not sign. The trooper explained, "The choice is yours. It's totally up to you." Assuring defendant that his property would not be thrown to the side of the road, the trooper repeated that he would not go into the car without defendant's consent. The trooper added, "The other alternative is this — I can tow your car, I'm going to apply for a warrant, okay,

it takes a little bit of time." At this point, defendant agreed to sign the consent form. The district court found the trooper was polite and pleasant throughout this entire exchange, although insistent on the search.

¶ 7. In the ensuing search, the trooper discovered a plastic bag containing marijuana inside a slightly opened backpack located in the passenger compartment of the vehicle. Defendant previously had informed the trooper that the backpack belonged to his passenger. When the trooper pulled the backpack out of the vehicle, the passenger confirmed that the backpack was his. The trooper asked if there was anything else in the backpack, and the passenger answered that the same backpack also contained a bag of cocaine. At the trooper's direction, the passenger pulled the cocaine from the backpack. The trooper then arrested defendant and the passenger and transported them to the local state police barracks.

¶ 8. Both men were charged with possession of the approximately 83 grams of marijuana and 102 grams of cocaine found in the passenger's backpack. Defendant and the passenger were represented by separate attorneys and filed separate motions to suppress the physical evidence and statements obtained during the traffic stop and the search. Each defendant also joined the motion filed by the other. After a joint hearing, the district court granted the passenger's motion because the trooper knew that passenger had not consented to the search of his backpack, but denied defendant's motion to suppress since he voluntarily consented to the search of his vehicle and its contents.

¶ 9. On appeal, defendant raises four issues. First, whether his admission of marijuana use and production of marijuana from his pocket are the products of a custodial interrogation conducted without the warnings guaranteed by *Miranda v. Arizona*, 384 U.S. 436 (1966). Second, whether defendant's consent to the search of his vehicle was tainted by the prior illegality of the unwarned custodial interrogation, and therefore involuntary. Third, whether his consent to search was voluntary given the totality of the circumstances. Finally, whether the district court erred in holding that the evidence seized from the backpack could properly be used against defendant on the basis that defendant had consented to the search. The fourth point was not properly preserved; therefore, we do not reach the merits of that claim. As to the first three points, we agree that the trooper subjected defendant to an

unwarned custodial interrogation. Nonetheless, we hold that defendant's consent to search his car was independently voluntary.

## I. Unpreserved Argument: Defendant's Consent to Backpack Search

¶ 10. We begin by addressing defendant's fourth argument, which was not particularly raised in defendant's presentation below in support of his own motion to suppress, and was only peripherally touched upon in connection with the passenger's suppression motion. Defendant now argues that the evidence taken from the backpack should have been suppressed against him because he could not give the trooper valid consent to search the passenger's backpack. Defendant contends that his consent to the vehicle search could not extend to his passenger's backpack because it did not belong to defendant and was not under his control. Additionally, defendant argues that the passenger never consented to the search, so the trooper's warrantless search of the backpack without the passenger's consent was invalid.

¶ 11. The district court relied on the above-described reasoning to grant the passenger's motion to suppress the evidence gathered from the backpack, but the court did not extend that rationale to defendant. Instead, the district court held that defendant consented to the search because he voluntarily signed the consent form. As recited earlier, the consent form included defendant's vehicle and "its contents . . . under [his] control." Defendant never argued, and the court never addressed, the issue of whether the backpack was, or was not, under defendant's control, or whether defendant's consent did, or did not, extend to his passenger's backpack when it was contained within defendant's automobile. Defendant contends this was error because the reasoning supporting the court's decision to grant the passenger's suppression motion applies equally to him.

¶ 12. The State counters that defendant did not argue this point below and that it is not preserved on appeal. We note that defendant's position raises potentially intricate questions concerning the degree of control or dominion over the backpack, or the lack thereof, necessary for a consent by defendant to its search to be valid against him, if not against his passenger. Assuming the automatic standing claimed by defendant to argue the point, the point was not made before the trial court.

510

■ ■ ¶ 13. Arguments that are "neither litigated nor decided below will not be addressed for the first time on appeal." *State v. Sprague*, 2003 VT 20, ¶ 11, 175 Vt. 123, 824 A.2d 539 (quotation omitted). The preservation rule exists so that the trial court can address any correctable errors before they are presented here, and develop an adequate record for any appeal. *State v. Wool*, 162 Vt. 342, 346, 648 A.2d 655, 658 (1994). Defendant's argument is unpreserved because his written submissions and his argument in support of suppression did not raise this particular issue in a manner requiring a ruling by the district court. See *State v. Parker*, 155 Vt. 650, 651, 583 A.2d 1275, 1276 (1990) (mem.) (requiring, for an issue to be preserved, that there be a "lower court decision from which to appeal"). The passenger challenged defendant's capacity to consent to a search of the backpack on the passenger's behalf, but did not challenge defendant's authority to consent to the search on defendant's behalf.[1] Further, in its ruling on the passenger's suppression motion, the trial court had no need to address whether defendant did or did not control the backpack in his car, or did or did not validly consent to its search vis-à-vis any interest defendant may or may not have had in its contents. Such issues, integral to whether defendant's rights were violated, were not presented to the trial court.

■ ¶ 14. Defendant claims he did preserve the issue by joining in his passenger's suppression motion, which defendant characterizes as explicitly making the same argument below. Defendant is mistaken. Passenger's motion and memorandum before the district court contended, in a single sentence, that defendant could not consent to a warrantless search of passenger's backpack so as to permit the contraband into evidence against the *passenger*. Defendant's particular interest and rights in this transaction were not raised in passenger's pleadings. Nothing more was offered at the motion hearing concerning any violation of defendant's rights aside from his own claim that whatever consent he gave was coerced. Defendant's unadorned statement that he "joined" in the passenger's suppression motion based on arguments not dispositive of defendant's own rights was not enough to preserve his claim on appeal. Consequently, the district court had no

---

[1] The State did not appeal the trial court's suppression of the backpack evidence against the passenger, so we do not address the court's ruling in this regard.

chance to confront the issues that defendant now raises; therefore, defendant has no decision from which to appeal on this point.

¶ 15. Defendant's final reason that this Court should address his argument is that the automatic-standing doctrine we adopted in *State v. Wright*, 157 Vt. 653, 654, 596 A.2d 925, 926 (1991) (mem.), stands for the rule that, where possession is charged against multiple parties, if a search is illegal as against one party, then the search must be illegal as against all of the parties. Defendant argues that the trial court's decision is directly contrary to that doctrine and if we affirm here, we will overrule *Wright*. This argument was not raised below. Because the trial court did not have a chance to address the argument, we need not resolve the question now. *Sprague*, 2003 VT 20, ¶ 11.

## II. Custodial Interrogation

¶ 16. Defendant argues that his admission of marijuana use and his production of marijuana from his pocket should be suppressed as products of a custodial interrogation conducted without *Miranda* warnings. *Miranda* warnings are required whenever a person is subjected to custodial interrogation, which means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Whether a custodial interrogation has taken place is judged under the totality of the circumstances. *State v. Willis*, 145 Vt. 459, 475, 494 A.2d 108, 117 (1985). The relevant inquiry is whether "a reasonable person would believe he or she were free to leave or to refuse to answer police questioning." *Id.*; see also *State v. Lancto*, 155 Vt. 168, 171, 582 A.2d 448, 449 (1990). In the case of a traffic stop, we will not consider a suspect "in custody" for purposes of *Miranda* unless the suspect was " 'subjected to restraints comparable to those associated with a formal arrest.' " *Id.* at 171, 582 A.2d at 449 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440-41 (1984)). Questioning that occurs "during a routine traffic stop does not constitute 'custodial interrogation' for the purposes of the *Miranda* rule." *State v. Boardman*, 148 Vt. 229, 231, 531 A.2d 599, 601 (1987).

¶ 17. Here, the district court concluded that defendant was not the subject of a custodial interrogation while he was questioned in the trooper's car. Suppression motions present mixed questions of

fact and law, and we review the district court's factual findings for clear error and its legal conclusion de novo. *State v. Stevens*, 2004 VT 23, ¶ 10, 176 Vt. 613, 848 A.2d 330 (mem.). Where the question is whether a custodial interrogation took place, we defer to the district court's findings as long as they are supported by the record, but our examination of its legal conclusion regarding whether the circumstances meet the standard for a custodial interrogation is plenary and nondeferential.

■ ■ ¶ 18. Contrary to the district court's ruling, the uncontroverted factual findings in this case lead to the conclusion that defendant was the subject of custodial interrogation once the trooper turned the conversation in the cruiser from a routine traffic ticket to the topic of marijuana. Defendant does not contend, and we do not hold, that he was in custodial interrogation when he entered the trooper's cruiser or when the trooper questioned him about his speeding. The mere placement of a person in a law enforcement vehicle "does not, in itself, establish custody," *Lancto*, 155 Vt. at 171, 582 A.2d at 449, nor, as noted above, does questioning "during a routine traffic stop" require *Miranda* warnings, *Boardman*, 148 Vt. at 231, 531 A.2d at 601. The in-cruiser questioning hit a turning point, however, when the trooper changed the subject of the questioning from what he said would be an arrest-free, civil traffic violation to defendant's involvement with illegal drugs. From an objective standpoint, this new line of questioning, in combination with defendant's extended detention inside the cruiser and the trooper's stated intent not to let defendant leave until he investigated the smell of marijuana in the car, turned what might have remained a simple roadside inquiry during a routine traffic stop into an interrogation under circumstances approximating arrest.

■ ¶ 19. The trooper's exchange with defendant, as captured on the in-cruiser recording, illustrates that after the ticket, the trooper ratcheted up the detention by making it clear to defendant that he could not leave pending the trooper's investigation of the suspected, and much more serious, criminal activity beyond the original cause of the stop. *State v. Pontbriand*, 2005 VT 20, ¶ 11, 178 Vt. 120, 878 A.2d 227 ("The . . . intentions of the investigating officers conducting the interview are relevant . . . if communicated to the suspect . . . to the extent they might cause a reasonable person to believe he or she is in custody."). The

trooper's stated intention, plus the district court's finding that defendant was already involuntarily detained inside the cruiser, created a situation where a reasonable person would perceive that he or she was in custody, not for the temporary detention normally associated with a speeding stop, but for as long as the officer deemed necessary to complete his investigation into the more significant drug offense. The convergence of defendant's involuntary presence in the cruiser, the trooper's declared recognition of the marijuana smell within defendant's car, and his expressed intent to keep defendant at hand until the marijuana issue was cleared up, meant that the detention was no longer temporary and routine, but was objectively equivalent to a formal arrest. *Lancto*, 155 Vt. at 171, 582 A.2d at 449. Consequently, the trooper had a duty to give defendant *Miranda* warnings before questioning him about drug use and drug possession. Defendant incriminated himself in response to the unwarned interrogation, and the evidence must be suppressed.

## III. Taint of Prior Illegality

¶ 20. Defendant argues that the search of his car and the backpack are tainted by the prior illegality of the unwarned custodial interrogation, and therefore, the fruits of the searches must be suppressed. This argument depends on defendant's misplaced reliance on *State v. Peterson*, 2007 VT 24, 181 Vt. 436, 923 A.2d 585, a case in which we extended the exclusionary rule to physical evidence obtained in violation of *Miranda* and the Vermont Constitution's privilege against self-incrimination, Vt. Const. ch. I, art. 10. Even though such nontestimonial evidence would not be excluded under the federal Fifth Amendment, see *United States v. Patane*, 542 U.S. 630 (2004), this Court determined to disallow such evidence "as fruit of the poisonous tree" lest investigators be induced to "flout *Miranda* [and Article 10] when there may be physical evidence to be gained." *Peterson*, 2007 VT 24, ¶¶ 24-28 (quotations omitted).

¶ 21. *Peterson* shares many facts in common with the instant case, but is ultimately inapposite. Suspect Peterson's misadventure began with Peterson pulling his car alongside a police vehicle to initiate a conversation with a law-enforcement officer. Law-enforcement officers detected the smell of marijuana in Peterson's car, and thereafter proceeded with a roadside pat-down, which produced evidence of marijuana from Peterson's person, and

inquiries that elicited Peterson's admissions of growing marijuana at home. This segued to a search of his car and house after he executed a consent-to-search form. *Id.* ¶¶ 2-3. At his house, the suspect was subjected to further unwarned interrogation, this time while under arrest, leading to his disclosure of twenty-seven marijuana plants growing behind his property. *Id.* ¶ 5. Declining to follow *Patane*, as explained above, we ruled to reverse the trial court's denial of a motion to suppress the twenty-seven plants last disclosed.[2]

 ¶ 22. *Peterson* is of no application here because we have already held that *Miranda* warnings are not necessary before law enforcement officials request consent to search. *State v. Crannell*, 170 Vt. 387, 393, 750 A.2d 1002, 1009 (2000), *overruled on other grounds by State v. Brillon*, 2008 VT 35, ¶ 14, 183 Vt. 475, 955 A.2d 1108, *cert. granted*, ___ U.S. ___, 129 S. Ct. 30 (2008). *Miranda* warnings are not required because a consent request is not "designed to elicit an incriminating response"; the request calls for no testimonial response and thus is not an interrogation. *Id.* at 392-93, 750 A.2d at 1009 (citing *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980)). Nothing in *Peterson* stands to the contrary because the evidence suppressed there was gained from the suspect's testimonial response to an unwarned interrogation, an entirely different situation than a consent request, where no warnings are required. The privilege against self-incrimination is simply not at issue when considering the validity of a suspect's consent to search.

### IV. Voluntariness of Consent

 ¶ 23. Defendant next argues that his consent to the vehicle search was involuntary. For consent to be valid, it need only be volitional, not a "knowing and intelligent waiver of a constitutional right." *State v. Zaccaro*, 154 Vt. 83, 88, 574 A.2d 1256, 1259 (1990). Whether consent is voluntary "is a question of fact to be determined from the totality of the circumstances." *Sprague*, 2003 VT 20, ¶ 23. Relevant circumstances include the defendant's age, intelligence, and emotional state, as well as the actions of law-enforcement officials. *State v. Badger*, 141 Vt. 430, 444, 450 A.2d

---

[2] We explicitly refused to consider, as unpreserved for appeal, any claims of *Miranda* or constitutional violations preceding that final discovery. *Peterson*, 2007 VT 24, ¶ 9.

336, 344 (1982). "The State bears the burden, in such an inquiry, of demonstrating that the consent was freely given and not 'coerced by threats or force, or granted only in submission to a claim of lawful authority.'" *Sprague*, 2003 VT 20, ¶ 23 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)). As with any appeal of a grant or denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusion de novo. *Stevens*, 2004 VT 23, ¶ 10.

¶ 24. "[C]ustody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson*, 423 U.S. 411, 424 (1976). Indeed, it is settled that consent may be properly deemed voluntary even when a suspect is handcuffed and under arrest. See 4 W. LaFave, Search and Seizure § 8.2(b), at 63 n.52, 65 n.65 (4th ed. 2004) (citing, among others, at n.52, *United States v. Childs*, 944 F.2d 491 (9th Cir. 1991) (consent from suspect earlier arrested at gunpoint not invalid as matter of law); *State v. Sokolowski*, 474 S.E.2d 333 (N.C. 1996) (consent valid from suspect earlier disarmed at gunpoint and arrested); and citing, among others, at n.65, *United States v. Burns*, 298 F.3d 523 (6th Cir. 2002) (consent valid from suspect in handcuffs); *United States v. Strache*, 202 F.3d 980 (7th Cir. 2000) (same); *State v. Harmon*, 910 P.2d 1196 (Utah 1995) (consent valid from suspect under arrest and in handcuffs); see also *Watson*, 423 U.S. at 424 (consent valid from suspect under arrest and in handcuffs). Defendant's encounter with the trooper was, by comparison, a much less coercive situation. Although in custody for purposes of *Miranda* during the trooper's explanation of consent, defendant was unrestrained. Always polite, the trooper applied no force or threat whatsoever, aside from outlining the necessity and delay of towing the car and obtaining a warrant.

¶ 25. Defendant argues that his consent to search his car was not voluntary because the totality of the circumstances created a situation where his signature on the consent form was merely a submission to the trooper's colorable authority. Defendant contends that because the trooper made it clear the car would be searched — with defendant's consent if given, or by warrant if consent was withheld — defendant reasonably perceived that he had no choice but to permit the search. Why that conclusion should necessarily follow from those facts is unexplained. Defendant posits, essentially, that the combination of custody, defendant's inexperience, the repeated requests for consent, and a false lure

of release, together with the trooper's declaration that, absent consent, the car would be held pending a warrant, compel the conclusion that defendant succumbed to police pressure as a matter of law.

¶ 26. The totality of the evidence, however, indicates otherwise and supports the trial court's findings and conclusion that defendant's consent was, in fact, voluntary. His extreme reluctance to consent reflects that he was not simply cowed by the circumstances of his involuntary detention, interrogation, incrimination, any pretense to generosity by the trooper, the trooper's call for back-up, and the repeated requests for consent. The trooper expressly told defendant that he did not have to agree to the search, that his permission had to be freely given, and that he could not be forced to consent. When defendant asked if the car could be searched if he did not sign the consent form, the trooper reiterated that it was defendant's choice to either give consent or to wait while the trooper applied for a warrant. Adding that the warrant process would result in his car being towed and some delay was neither inaccurate nor disingenuous.

¶ 27. If defendant labored under an earlier impression that he had no choice but to allow the search, this must have been dispelled by the trooper's later explanation of the consent form and defendant's options. Although insistent on seeking permission to search, the trooper was just as persistent in reiterating that it was defendant's choice, and that his consent could not be forced. Defendant's inquiry about whether the search could proceed without his consent confirmed that he did not perceive the trooper as controlling the choice. As the conversation progressed, the trooper made it clear that the car could not be searched without either consent or a warrant. The trooper explicitly told defendant that he could not be forced to consent. The trooper's request for consent and his statement that he would, alternatively, seek a warrant if defendant declined consent, confirmed from an objective standpoint that defendant could not be compelled to agree to the search.

¶ 28. Taking all of the trooper's statements and explanations into account, and despite the trooper's insistence, it was obvious that without consent, the officer could not search without a warrant, and that without a warrant, the officer could not search without consent. The alternative of towing defendant's car pending

a warrant was real, not feigned, and defendant was clearly told it was his choice to make. The district court determined that this explanation of the warrant process, while probably daunting, was not "false or otherwise sufficient to break [defendant's] will. . . . [Nor was it] inherently coercive or unfair." The court's conclusion is supported by the record.

¶ 29. The trooper's clear and unambiguous statements were no assertion of colorable authority to coerce defendant's permission. This was quite unlike the situation cited by defendant in *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968), where a homeowner's consent to search was deemed involuntary when given in response to a claim by police that they already had a warrant in hand. In contrast, defendant's consent was no acquiescence to any pretense that the trooper was already authorized to search the car. The trooper plainly presented defendant with the choice, "totally up to [defendant]," between consenting to the search and waiting for a warrant. Numerous state and federal courts have held that a suspect's consent is voluntary in the face of being told that refusal would result in the police seeking or obtaining a warrant. See W. LaFave, *supra*, § 8.2(c), at 69-70 nn. 88-90, 93 (citing cases). That defendant's options were onerous made his choice unappealing, but not involuntary.

¶ 30. Even assuming the trooper represented the warrant as likely or sure to issue, such an expressed opinion still would not render defendant's consent involuntary according to the federal precedent relied on by defendant. In *United States v. Faruolo*, 506 F.2d 490 (2d Cir. 1974), the court affirmed the trial court's ruling that consent to search was voluntary when the suspect, arrested while moving hijacked property from a truck into his house, agreed to a warrantless search after being advised he did not have to consent, but that his premises would be secured for as long as it might take to get a warrant which, according to the officer, would be issued. *Id.* at 492-93. Even in the concurring opinion, cited with some reverence by defendant, Judge Newman agreed that Second Circuit precedent upholds finding consent is voluntary "notwithstanding an agent's having expressed his well-founded view that a warrant can be obtained." *Id.* at 497 (citing, in part, *United States v. Kohn*, 495 F.2d 763 (2d Cir. 1974), which upheld the finding of consent despite "the agent's statement that they had the right to get [a warrant], and that since it was so late they would have to secure the premises, leave a guard, and return

with a warrant in the morning" (quotation omitted)). The trooper's statements that he had reason to believe there was contraband in the car and could get a warrant was, at the least, well-founded, given the strong smell of raw marijuana in the automobile.

¶ 31. Lastly, defendant contends that his consent was involuntary because the trooper led him to believe that if he consented he would be free to leave. This argument is unavailing because the evidence showed that the trooper offered defendant no such inducement, nor did he make defendant any promises aside from telling him that if he found only "a little bit" or a pipe in the car, it would not be a "big deal." Defendant confuses the proffer of leniency if only a pipe or small amount of marijuana was discovered with an offer to release defendant in exchange for his consent to search. The first offer may be fairly implied from the trooper's comments, but the record confirms that the latter proposal, seemingly irrational in any event, was never made.

¶ 32. In sum, the district court's conclusion that defendant's consent to search was not coerced, despite being unlawfully interrogated while in custody, is supported by the weight of the evidence and the totality of the circumstances.

*Affirmed in part and reversed in part.*