2010 VT 93

### In re Julie WILLEY, Administrator of the Estate of Amy L. Willey

[14 A.3d 954]

No. 09-420

¶ 1. October 28, 2010. Grandmother Julie Willey appeals from a decision by the Orleans Superior Court declining to release to her, in her capacity as financial guardian of her granddaughter, settlement proceeds awarded to granddaughter in a dram shop and wrongful death action. Grandmother contends that the probate court, and not the superior court, has jurisdiction over how the settlement proceeds are invested and expended and that the superior court therefore erred in retaining control over the investment and spending plan for granddaughter's settlement award. We agree and reverse.

¶ 2. Grandmother's daughter was killed in a ·2002 automobile accident that occurred after she left a pub in Westmore, Vermont, with a friend. Daughter's friend, who was driving at the time of the accident, had a blood-alcohol concentration of .18 when she left the pub. After daughter's death, grandmother was appointed by the probate court to serve as financial guardian[1] for granddaughter,

daughter's then two-year-old child. Grandmother filed a dram shop and wrongful death action on behalf of herself, her daughter's estate, and granddaughter against the pub, the pub's owner, and the owners of the building that housed the pub. Grandmother hired counsel who represented all plaintiffs. On the seventh day of trial, the parties reached a settlement agreement providing that the pub's insurer would pay $900,000 to plaintiffs.

¶ 3. On October 7, 2008, after the settlement, grandmother filed a motion with the superior court to distribute the settlement proceeds in the following manner: $10,000 to daughter's sister, $440,000, less one half of the reasonable attorney's fees, to grandmother in her individual capacity, and $450,000, less one half of the reasonable attorney's fees, to grandmother as financial guardian of granddaughter. The superior court appointed an attorney and a guardian ad litem (GAL) to represent granddaughter's interests and then held a hearing on May 27, 2009, to consider testimony concerning the proposed division of the settlement proceeds. The court also heard testimony regarding "how the proceeds should be invested on behalf of both [grandmother] and [granddaughter]" at this time. At the hearing, both attorneys recommended that forty-five percent of the settlement award be given to grandmother and the remaining fifty-five percent to granddaughter. Grandmother's attorney also called an expert who testified to the benefits of investing the proceeds in long-term annuities.

¶ 4. In an August 3, 2009 order, the superior court rejected the proposed distribution. The court concluded that 14 V.S.A. § 2643 "imposes an affirmative obligation on a superior court judge to protect the best interests of the minor through an independent inquiry to deter-

---

[1] Grandmother was initially awarded full guardianship over granddaughter after daughter's death. On August 23, 2007, her role was limited to financial guardian.

mine whether a proposed settlement and parental release does in fact protect the child's best interests," citing *Whitcomb v. Dancer*, 140 Vt. 580, 586, 443 A.2d 458, 461 (1982). Under this standard, the court approved the settlement[2] but awarded eighty-three percent of the settlement proceeds to granddaughter and seventeen percent to grandmother. The court did not, however, resolve outstanding disputes about who should pay the attorney's fees of plaintiffs' counsel and how much should be paid.

¶ 5. The superior court further rejected grandmother's proposed investment plan, citing concerns that it relied on the questionable "assumption that the purchasing power of the dollar will remain constant over [granddaughter's] lifetime." Again noting that the superior court "has a responsibility to protect the best interests of [granddaughter]," the court "concluded that there should be a plan for [granddaughter's] money that includes some investments in equities that will increase in their dollar value if there is an inflation in the cost of living." The court then, relying on language in Vermont Rule of Civil Procedure 17(b) — which authorizes trial courts to appoint a GAL or to "make such other order as it deems proper for the protection of the infant or incompetent person" — appointed a special fiduciary to formulate a plan for investing granddaughter's share of the settlement proceeds.

¶ 6. The fiduciary, a lawyer with a concentration in asset management, recommended the establishment of a revocable trust with restrictions on withdrawal of the principal. He retained an asset management firm to prepare an investment management plan on the assumption that granddaughter would attend college. Grandmother objected to the fiduciary

report on numerous grounds. She asserted that the superior court had no jurisdiction to supervise the investment and expenditure of the settlement funds. Consistent with that position, she filed a motion to release to her the settlement proceeds, as allocated by the superior court in its August 3 order, so that she could invest the money "under the watchful eye of the Orleans District Probate Court." Grandmother contended that the superior court's jurisdiction had ceased once it approved a division of the settlement proceeds and that jurisdiction did "not exten[d] over the guardian's decisions about how the assets of [granddaughter] should be invested and reinvested." The attorney for granddaughter opposed this motion because of the adversarial posture that had developed between grandmother and granddaughter.

¶ 7. Grandmother also objected to the fiduciary's report on its merits, arguing that the funds should be set up as a structured settlement under federal law and submitting the report of an expert witness on how that would be done to minimize tax liability. The appointed attorney for granddaughter also sought some changes in the fiduciary's proposal.

¶ 8. The superior court scheduled a hearing on grandmother's motion to release granddaughter's settlement funds to her. The court denied this motion because grandmother and granddaughter had been in an adversarial relationship over the distribution of the settlement proceeds, as claimed by the attorney for granddaughter. It held that it had the power under V.R.C.P. 17(b) to make such order as it deems proper for the protection of the minor and that authorization included the power to deny distribution to grandmother.

¶ 9. Following the denial of grandmother's motion to distribute the settlement proceeds of granddaughter to her as guardian, the court held a hearing on the

[2] There was no opposition to the amount of the settlement, and the court never addressed the gross settlement amount.

fiduciary's report. This hearing led to a specific proposal from the special fiduciary under which he would serve as trustee, with an investment manager, to manage granddaughter's settlement funds at least until granddaughter reached the age of 35 years. The attorney for granddaughter supported the fiduciary's proposal. Apparently because grandmother filed a notice of appeal from the denial of the motion to distribute the funds to her, the superior court has not acted on the fiduciary's proposal.[3]

¶ 10. Grandmother does not challenge the superior court's allocation of the settlement proceeds on appeal. Rather, grandmother takes issue only with the superior court's refusal to release granddaughter's settlement proceeds directly to her as granddaughter's financial guardian. Specifically, grandmother argues that the probate court has exclusive jurisdiction over how the settlement proceeds are invested and that the superior court's role in the matter ended once it approved the division of the settlement proceeds.

¶ 11. As the jurisdictional limits of Vermont's courts are set forth by statute,

see, e.g., 4 V.S.A. §§ 113[4] (outlining generally jurisdiction of superior court), 311 (outlining generally jurisdiction of probate courts), grandmother's challenge to the superior court's jurisdiction presents a question of law that we review de novo. See *Aither v. Estate of Aither*, 2006 VT 111, ¶ 4, 180 Vt. 472, 913 A.2d 376 (reviewing trial court's dismissal for lack of jurisdiction de novo). We accordingly grant no deference to the superior court's judgment that it could properly retain supervision over how the wrongful death settlement proceeds are invested. In interpreting statutes, as we must in this case, it is our foremost goal to implement the intent of the Legislature. *State v. Harris*, 2009 VT 73, ¶ 5, 186 Vt. 225, 980 A.2d 785. To best achieve this aim, we first look to the plain meaning of the words used. *State v. Pecora*, 2007 VT 41, ¶ 4, 181 Vt. 627, 928 A.2d 479 (mem.). When statutes involve the same subject or are otherwise closely related, we read them together in pari materia to the extent possible. *Bd. of Trs. of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.*, 162 Vt. 571, 574, 649 A.2d 784, 786 (1994).

¶ 12. The superior court in this case was acting under 14 V.S.A. § 1492(c), the wrongful death statute. The statute indicates that the superior court has the power to determine how the settlement proceeds from a wrongful death action should be distributed: "[the] distribution [of such proceeds] . . . shall be in proportion to the pecuniary injuries suffered, the proportions to be determined upon notice to all interested persons in such manner as the superior court . . . shall deem proper . . . ." Although the statute plainly authorizes the superior court to determine how the proceeds are divided, *Calhoun v. Blakely*, 152 Vt. 113, 116, 564 A.2d 590, 592 (1989), it does not authorize

---

[3] Although no party has raised this issue, we have serious concerns whether the motion denial represents a final judgment from which grandmother could appeal. Among other consequences, the cessation of activity by the superior court has meant that granddaughter's settlement funds have not been distributed, and, therefore, have not been invested for her benefit. We recognize, however, that dismissal of the appeal for lack of a final judgment would only delay further distribution of the settlement proceeds and that the appeal raises a central issue that will come to us eventually. Therefore, we decide this appeal under V.R.A.P. 2.

---

[4] This case was decided before the restructuring of the trial courts and is not affected by that restructuring.

the superior court to control how the proceeds are used or invested *after* distribution, see *Estate of Tilton v. Lamoille Super. Ct.*, 148 Vt. 213, 216, 531 A.2d 919, 921 (1987) (noting that § 1492(c) "is directed toward fair *distribution* of a wrongful death award among competing claimants" (emphasis added)). The wrongful death statute cannot, therefore, serve as an authorization for the superior court's actions in this case.

¶ 13. On the other hand, it is clear that the probate court has jurisdiction over financial guardianship of the assets of a minor child. 14 V.S.A. § 2602 provides:

> The probate court by which a guardian is appointed shall have jurisdiction of the estate of the ward and shall alone be authorized to license the sale of the estate and settle the guardian's account. In accordance with the rules of probate procedure, a guardian shall annually account to the court for the proceeds and expenditures of the ward's estate, together with an account of the guardian's fees.

The settlement proceeds are part of the "estate of the ward" for purposes of that statute. Section 2653(a) provides that the guardian appointed by the probate court "shall have the care and management of the estate" and § 2653(b) goes on to specify how the "cash resources" of the minor may be invested.[5]

¶ 14. Nevertheless, granddaughter argues that there are two sources of continuing jurisdiction over the settlement proceeds in the superior court: 14 V.S.A. § 2643(b) and Rule 17(b) of the Vermont Rules of Civil Procedure. We start with the statute, which reads: "Any claim [of a minor] settled for a sum in excess of $1,500.00 shall require the approval of a court-appointed guardian." 14 V.S.A. § 2643(b). The opening subsection of the statute requires a superior judge to "approve of and consent to a release to be executed by a parent in the settlement of any claim which does not exceed the sum of $1,500.00." *Id.* § 2643(a). The attorney for granddaughter argues that this statute is relevant because of our decision in *Whitcomb v. Dancer. Whitcomb* was heard by this Court after the current version of § 2643 was enacted, but it was based on facts that occurred under an earlier version of the statute that set the cutoff at $500 and did not contain subsection (b). 140 Vt. at 585-86, 443 A.2d at 460. We held that the requirement for a court-appointed guardian in 2643(b) simply codified the common law, which imposed such a requirement. Thus, the purpose of the statute was to relax the common law for amounts below the then $500 threshold, but not for amounts above the threshold. *Whitcomb*, 140 Vt. at 587, 443 A.2d at 461. The Court explained that "[t]he statute was obviously intended to permit the settlement of small claims belonging to minor children without the formality and expense attendant upon the appointment of a guardian for the child." *Id.* at 586, 443 A.2d at 461. It is clear in context that we were talking about a guardian appointed by the probate court, and not a guardian ad litem appointed by the superior court, because we referred to "formality and expense" and cited the probate guardian statute. *Id.* at 586-87, 443 A.2d at 461.

¶ 15. If anything, *Whitcomb* supports the role of the probate court in approving substantial settlements, and not a role for the superior court. Moreover, the statute

---

[5] We are hampered by the absence of a final judgment. Nevertheless, the fiduciary's proposed investment plan, as agreed to by the attorney for granddaughter, does not comply with the restrictions of § 2653(b). There is no indication in the record that either the fiduciary or the trial court believed that § 2653(b) applied in these circumstances.

does not speak to ongoing supervision of settlement amounts after a settlement has been approved. Thus, we see nothing in § 2643, as construed in *Whitcomb*, that provides authority for the superior court to supervise the use and investment of a minor's settlement proceeds once the settlement is approved.

¶ 16. We turn to Rule 17 of the Vermont Rules of Civil Procedure as a source of the superior court's authority to supervise investment and use of the minor's settlement proceeds through a special court-appointed fiduciary. The superior court specified that it was acting under Rule 17(b). This rule provides that "[t]he court shall appoint a guardian ad litem for an infant . . . not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant." V.R.C.P. 17(b). Granddaughter contends that the superior court's appointment of a fiduciary to create and oversee an investment plan for the settlement proceeds and the court's insistence on supervising the investment of the proceeds are the sorts of "other order[s]" contemplated by the rule.

¶ 17. We note at the outset that the rules of civil procedure "shall not be construed to extend . . . the jurisdiction of the superior courts." V.R.C.P. 82. Rule 17(b) is intended to ensure that a minor's interests are adequately represented in court proceedings, as at common law "children do not possess the requisite legal capacity to participate in litigation in their own names." *Miller v. Miller*, 677 A.2d 64, 66 (Me. 1996); accord *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("A minor . . . normally lacks the capacity to bring suit for himself."). A court may, pursuant to Rule 17(b), appoint a GAL to represent a minor's interests or take other steps to ensure that the minor is adequately represented in a matter properly litigated before the court. See 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1570,

at 665 (3d ed. 2010) (noting that the federal counterpart to Vermont Rule 17(b)[6] authorizes courts to appoint a GAL or issue another appropriate order for the protection of infant or incompetent in litigation); see also *Ruppert v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 671 F. Supp. 151, 172 (E.D.N.Y. 1987), *rev'd on other grounds*, 871 F.2d 1172 (2d Cir. 1989) (noting that under the federal rule counterpart to Vermont Rule 17(b), "a court may in its discretion decide that the circumstances surrounding given litigation indicate that some other form of protection [other than a GAL] of an incompetent's interests would be more appropriate or that appointment of a guardian is simply unnecessary"). Consistent with the limited function of the procedural rules, Rule 17(b) is not intended to expand the scope of litigation, even given the contention that expansion somehow protects the minor litigant. Thus, the rule protects minors in their role as parties but does not support giving general powers over their persons or property without specific statutory authorization. See also *Eagan v. Jackson*, 855 F. Supp. 765, 775 (E.D. Pa. 1994) (rejecting plaintiff's contention that federal counterpart to Vermont Rule 17(b) grants court "broad license . . . to protect [incompetent's] interests" by issuing orders otherwise outside court's authority and noting that instead "more certain sources" for court's authority must be found).

---

[6] The Reporter's Notes to Vermont Rule 17 explain that Vermont's rule "is based on Federal Rule 17, as modified in Maine Rule 17." Reporter's Note, V.R.C.P. 17. The language at issue was once part of the federal rule, but that rule was amended in 2007 "as part of the general restyling of the civil rules," 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1541, at 468 (3d ed. 2010). The subject is now covered in a different form in F.R.C.P. 17(c)(2).

¶ 18. The clear import of the superior court's action is to expand its jurisdiction over the settlement proceeds after they are distributed, exactly the jurisdiction the Legislature established in the probate court. Whatever the content of the court's order, it will involve creation of a form of financial guardian and long-term supervision of that fiduciary by the superior court. Again, this is exactly the supervision that is entrusted to the probate court. The superior court's power under V.R.C.P. 17 to protect the interests of the minor party in litigation before it does not create jurisdiction to go beyond the scope of the litigation. The superior court, acting in equity, does not have jurisdiction over "probate matters if the probate court can reasonably and adequately handle the question." *In re Estate of Leonard*, 132 Vt. 348, 349, 318 A.2d 179, 180 (1974). Here, the statutes provide the probate courts with the powers to allow that court to properly supervise the actions of fiduciaries for the protection of the minor ward. The statutes include requirements for investing the minor's assets as discussed above. In this case, the probate court can "reasonably and adequately" handle the supervision of the guardian's investment and use of granddaughter's settlement funds. There is no ground for superior court jurisdiction.

¶ 19. Much of the argument of the attorney for granddaughter itemizes the ways, in counsel's view, that grandmother has acted in her self-interest and against the interest of granddaughter and the need for continuous supervision to ensure that granddaughter's financial interests are protected. Thus, counsel argues that releasing the settlement proceeds "could be a failure to protect [granddaughter] from the potential improvidence of [grandmother]." We accept the argument that ongoing supervision is required, but find no grounds to hold that the supervision must come from the superior court rather than from the probate court. Ac-

cordingly, we hold that the superior court should have entered a final judgment[7] and released granddaughter's settlement proceeds as directed by grandmother as financial guardian.

*Reversed and remanded.*

Motion for reargument denied November 30, 2010.

2010 VT 108

**In re D.McD.**

_____

[7] As discussed in ¶ 4, *supra*, the superior court has not determined the net recovery of the parties. Because grandmother did not appeal the superior court's allocation decision allocating eighty-three percent of the gross proceeds to granddaughter, that allocation is now final. As this Court held in *In re Brown Estate*, the superior court must now, pursuant to 14 V.S.A. § 1492(c), determine the net recovery of each beneficiary, deducting "all necessary charges, outlay and deductions which were necessary and proper . . . [including] any attorney's fees, as well as those of the administrator, necessitated to bring about the recovery for the wrongful death" and issue a final judgment. 129 Vt. 230, 232-33, 275 A.2d 1, 2 (1971).