2015 VT 38

## State of Vermont v. Wayne Hutchins

[114 A.3d 906]

No. 13-210

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Hayes, Supr. J., Specially Assigned**

Opinion Filed February 6, 2015

---

432

*William H. Sorrell*, Attorney General, and *David Tartter* and *Ultan Doyle*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Joshua S. O'Hara* and *Sara Puls*, Appellate Defenders, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** This suppression-of-the-evidence case asks us whether all turns of the steering wheel require a signal. We respond that they do not. Defendant appeals the criminal division's denial of his motion to suppress and dismiss his charge for driving under the influence (DUI). In that motion, defendant claimed the evidence underlying his DUI charge should have been suppressed because the arresting officers lacked reasonable suspicion to justify an investigative stop of his vehicle. The trial court found that defendant violated Vermont's turn-signal statute, so the arresting officers had justification to pull him over. It accordingly denied defendant's motion, and defendant now raises the same argument on appeal. We hold that defendant did not violate that statute, and therefore reverse.

¶ 2. In its order denying defendant's motion to suppress and dismiss, the court found the following facts. On July 12, 2012, at approximately 8:54 p.m., Corporal David Butterfield and Officer Michael Winkler were on routine patrol together in the Town of Brandon. The officers observed defendant's vehicle and ran a record check, which revealed that one of the male registered owners' license was suspended. The officers followed the vehicle as it drove east on Park Street and approached the intersection of Park Street, Country Club Road, and Smalley Road.

¶ 3. The officers observed defendant stop his vehicle at the Park Street stop sign and then activate the right turn signal. The vehicle then "continued across the intersection making the slight turn onto Smalley Road without making a complete right turn onto Country Club Road." Corporal Butterfield told Officer Winkler, who was driving, to stop defendant. When Officer Winkler asked why, Corporal Butterfield responded, "not putting on the turn signal 100 feet before the stop sign." Officer Winkler

pulled defendant over. As a result of the stop, defendant was charged with DUI, in violation of 23 V.S.A. § 1201.

¶ 4. Defendant filed a motion to suppress all evidence underlying his DUI charge on grounds that he was stopped illegally by Corporal Butterfield and Officer Winkler. The trial court denied that motion. Defendant filed a motion to reconsider, which the court also denied, without discussion. Defendant then entered a conditional guilty plea in which he reserved the right to appeal the court's orders. He now appeals those orders to this Court.

¶ 5. A more detailed description of the intersection in question along with an aerial photograph of it, which was an exhibit at the trial court, will illuminate the parties' arguments and inform our analysis. Country Club Road is a relatively straight north-south road. Smalley Road intersects Country Club Road at approximately a 45-degree angle bearing south-east. Park Street curves and widens as it approaches Country Club Road from the west, so that at the intersection a car stopped at the Park Street stop sign looking east would be facing across Country Club Road toward the entrance of Smalley Road. There is a jog between Park Street and Smalley Road, but not a veering from the natural course that they mutually create. Thus, the trajectories of Park Street and Smalley Road align such that from an aerial view they appear to form a single curving road that is bisected by Country Club Road in the middle of that curve.

¶ 6. Although appeals of motions to suppress often present mixed questions of law and fact — i.e., "whether the factual findings supported by the record lead to the conclusion, that, as

a matter of law, suppression of evidence was or was not neces-sary," *State v. Lawrence*, 2003 VT 68, ¶ 9, 175 Vt. 600, 834 A.2d 10 (mem.) — for reasons we explain below, we find only an issue of law here. We examine " 'the [trial] court's . . . legal conclusions de novo.' " *State v. Harris*, 2009 VT 73, ¶ 8, 186 Vt. 225, 980 A.2d 785 (quoting *State v. Sole*, 2009 VT 24, ¶ 17, 185 Vt. 504, 974 A.2d 587).

■ ¶ 7. We first define the scope of our analysis. If the officers lacked reasonable suspicion that defendant was violating a law when they initiated the traffic stop, all evidence obtained by virtue of that stop must be suppressed. See *State v. Marcello*, 157 Vt. 657, 657-58, 599 A.2d 357, 358 (1991) (mem.) ("Generally, the Fourth Amendment to the United States Constitution and Chapter I, Article 11, of the Vermont Constitution require that police officers have reasonable and articulable suspicion that someone is engaged in criminal activity, or is violating a motor vehicle law, before conducting an investigatory stop."); *State v. Badger*, 141 Vt. 430, 452-53, 450 A.2d 336, 349 (1982) ("Evidence obtained in violation of the Vermont Constitution, or as a result of a violation, cannot be admitted at trial as a matter of state law."). We "do not attempt to divine the arresting officer's actual subjective motiva-tion for making the stop; rather, [we] consider from an objective standpoint whether, given all of the circumstances, the officer had a reasonable and articulable suspicion of wrongdoing." *State v. Lussier*, 171 Vt. 19, 23-24, 757 A.2d 1017, 1020 (2000). Thus, we examine whether the officers had reasonable suspicion to stop defendant for violating a motor vehicle law. The State raised only one potential violation — of 23 V.S.A. § 1064(d), "Signals required" — before the trial court, and proclaimed at oral argument that the only issue in this case is whether defendant made a "turn" for purposes of § 1064(d).[*] We therefore analyze only this issue.

¶ 8. ■ Although defendant characterizes this question of whether or not he made a turn as a mixture of law and fact, the trial court's factual findings are undisputed. The parties contest

---

[*] We note that "reasonable suspicion does not require confirmation of criminal activity before making a stop. Specific and articulable facts, along with rational inferences warranting a reasonable belief in potential wrongdoing, are sufficient." *State v. Edmonds*, 2012 VT 81, ¶ 11, 192 Vt. 400, 58 A.3d 961 (emphasis omitted). The distinction between reasonable suspicion and an actual violation is immaterial here, however, because the State has not asserted, and the court did not find, that the officers made a mistake of fact or law.

neither the relative orientations of the roads that constitute the intersection, nor the path followed by defendant's vehicle. Defendant reframes his argument several ways, but it boils down to whether his particular path of travel, taken at that intersection, was "turning," as that term is used in § 1064(d). That question is purely legal. See *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280 ("The question of whether the facts as found met the proper standard to justify a stop is one of law."). ·

¶ 9. ■ ■ The trial court held specifically that defendant's conduct violated 23 V.S.A. § 1064(d), and therefore that the officers had reasonable suspicion to stop him. Because the court erroneously interpreted that statutory provision, however, its conclusion cannot stand. "When interpreting a statute our goal is to give effect to the intent of the Legislature, and to do so we first look at the plain, ordinary meaning of the statute. If the plain language is clear and unambiguous, we enforce the statute according to its terms." *State v. Therrien*, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129 (quotation omitted). Section 1064(d) provides that "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." The last two words, "before turning," unambiguously qualify the preceding command such that it does not apply unless a vehicle in fact turns. Thus, the act of turning is an essential element of any violation of this provision.

¶ 10. ■ The trial court apparently considered any turn of the wheel at an intersection to constitute "turning" for purposes of § 1064(d). We disagree. To be sure, "[w]e interpret penal statutes strictly, but not so strictly as to defeat the legislative purpose in enacting the law or to produce irrational and absurd results." *In re Jones*, 2009 VT 113, ¶ 7, 187 Vt. 1, 989 A.2d 482 (quotation omitted). It would be absurd to require drivers to signal whenever the road they are traveling upon winds to the left or right, and the Legislature could not have intended that result. A driver's turn signal indicates to others that she will be diverging from the natural course of the road she is currently following.

¶ 11. Our discussion of turns in *State v. Harris* supports that interpretation. 2009 VT 73, 186 Vt. 225, 980 A.2d 785. There, we analyzed § 1064(a), (d), and (e) — the sum of Vermont statutory provisions addressing turn signals — as they applied to a driver's

exit from a traffic rotary. *Id.* ¶ 4. We noted that the key inquiry was whether or not the alleged violator had "changed direction." *Id.* ¶ 5. The State's theory was that "when a car is in a rotary, it is moving in one direction, namely, a counter-clockwise circle, and that exiting the rotary is a change of direction because the car must make a right turn off the circle." *Id.* We remanded for the trial court to make findings of fact regarding the defendant-driver's exit maneuver because of the "possibil[ity]" that a particular rotary's "entry and exit locations would be located in such proximity to each other that a vehicle could travel through the rotary without making any discernible or significant change in direction," but we implied that other exits from rotaries likely would be "turns" under § 1064. *Id.* ¶¶ 5-8. Thus, a vehicle following a circular or arcing roadway would not need to activate a turn signal to continue around that arc because it is the natural course of the road. Only upon departing from that natural course — and thus changing direction — would a "turn" occur.

¶ 12. ▮ ▮ Although defendant here rotated his wheel, he did so to follow the natural course of a road; therefore, he did not "turn," and § 1064(d) did not apply to him. Had Country Club Road not bisected the Park Street-Smalley Road pathway, defendant would have traveled in a smooth, predictable arc from Park Street onto Smalley Road. The presence of a bisecting road did not change his trajectory or transform it into a turn. Indeed, Corporal Butterfield's July 14, 2012 affidavit asserted that defendant "activated his right turn signal indicating he was intending to make a right ha[n]d turn onto Country Club Rd. The vehicle then continued straight across Country Club Rd. onto Smalley Rd. without making a turn. This is a violation of Title 23 VSA 1064 (Signals Required)." The act of signaling and then not turning, however, does not violate § 1064(d) because the plain, unambiguous language of that provision makes turning an essential element of any violation. *Supra*, ¶ 9.

¶ 13. ▮ The trial court relied heavily upon our decision in *State v. Fletcher* in concluding that the officers had reasonable suspicion that defendant violated § 1064(d). 2010 VT 27, 187 Vt. 632, 996 A.2d 213 (mem.). That case provides little guidance here, but nevertheless bolsters our conclusion. In *Fletcher* we rejected a driver's argument that the phrase "when required" in § 1064(d) suggests that a driver needs to signal her turn only when traffic

conditions make it appropriate. *Id.* ¶ 11. We thus held that the "plain, ordinary meaning of [§ 1064(d)] indicates that the operator of a motor vehicle must indicate an intention to turn within one hundred feet of *turning* regardless of traffic conditions." *Id.* (emphasis added). That the driver there had made a turn was undisputed. In this case, by contrast, there is no question as to traffic conditions — only a question of whether defendant's path of travel across the intersection was a turn as a matter of law.

¶ 14. Because we conclude that defendant did not make a turn under § 1064(d), he could not and did not violate the statute. The evidence obtained by virtue of the traffic stop must therefore be suppressed.

*Reversed and remanded, with instructions to vacate the order denying defendant's motion to suppress, and to dismiss his DUI charge.*