2008 VT 111

## State of Vermont v. Joseph S. McGuigan

[965 A.2d 511]

Nos. 06-437 & 06-501

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 14, 2008

*Stuart G. Schurr*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Brian R. Marsicovetere* of *Griffin, Marsicovetere & Wilkes, P.C.*, White River Junction, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant appeals the denial of his motion to suppress evidence that ultimately led to defendant's DUI processing. On February 24, 2006, a state trooper stopped to render roadside assistance to defendant, who was some fifty miles off course. After smelling alcohol and having difficulty understanding defendant when he spoke, the trooper administered a preliminary breath test (PBT) and conducted field-sobriety exercises in order to determine whether defendant was driving under the influence in violation of 23 V.S.A. § 1201(a). Defendant seeks to suppress the PBT and all the evidence obtained thereafter, arguing that his participation was not voluntary. Defendant also argues that his admissions regarding alcohol consumption should be suppressed. We affirm.

¶ 2. Defendant's car was stopped in the breakdown lane of I-91 with its four-way hazard lights flashing when a state trooper approached to render assistance at approximately 10:30 p.m. Defendant indicated to the trooper that he had run out of gas while on his way to Mount Snow and had just called 911. The trooper found this explanation to be odd, given that defendant had passed the exit to Mount Snow approximately fifty-five miles earlier. While defendant was speaking, the trooper smelled an odor of intoxicants.

¶ 3. After checking defendant's license, the trooper discussed contacting the American Automobile Association (AAA) for help. He explained that he had internet access in his cruiser and asked defendant if he would "mind sitting in there" while the trooper checked on whether roadside assistance was available. Defendant agreed and, after the trooper frisked him for weapons, walked around to the passenger side of the cruiser and got inside. While inside the cruiser searching the internet, the trooper spoke with defendant about his work and about the route he had taken to Vermont. The trooper smelled "a strong odor of alcohol" coming from defendant's person and noticed that defendant's eyes were

bloodshot and watery. The trooper had trouble understanding defendant at times, because his speech was not "smooth and clear." The trooper asked defendant whether he had consumed any alcohol, and defendant replied, "[n]ot much." On further questioning, defendant admitted that "he had [had] a sip of his mother's pina colada approximately four hours earlier."

¶ 4. The trooper told defendant the best thing he could do was "to be honest" and told him to blow into a PBT device. Defendant did so. The trooper then explained to him that the result was almost twice the legal limit in Vermont and again asked defendant how much he had had to drink. Defendant admitted he had consumed "three or four beers." The trooper then told defendant that he was going to administer field-sobriety tests. After defendant showed signs of impairment on the first test, the trooper asked him to step out of the cruiser and administered several other field-sobriety exercises. When defendant showed further signs of intoxication, he was placed under arrest for DUI and taken to the barracks, where a breathalyzer test confirmed he had a blood-alcohol content (BAC) of .141.

¶ 5. Defendant moved to suppress the statements that he made to the trooper after entering the cruiser, as well as the PBT and all the evidence obtained thereafter. Defendant claimed his participation in these tests was compelled. The trial court denied his motion.

¶ 6. Defendant raises five issues on appeal, claiming that: (1) field-sobriety exercises and PBTs are searches under the Fourth Amendment of the United States Constitution and Article 11 of the Vermont Constitution; (2) Vermont drivers have a right to refuse PBTs and field-sobriety tests; (3) his participation in the PBT and field-sobriety tests was involuntary; (4) the statements he made to the trooper after being informed of his PBT results should be suppressed because the trooper failed to read him his *Miranda* warnings, in violation of the Fifth Amendment of the United States Constitution and Article 10 of the Vermont Constitution; and (5) the trial court erred in finding that probable cause to arrest existed before the PBT was administered. When reviewing a motion to suppress, we uphold the trial court's findings unless clearly erroneous, while reviewing the court's legal conclusions de novo. *State v. Lawrence*, 2003 VT 68, ¶¶ 8-9, 175 Vt. 600, 834 A.2d 10 (mem.).

## I.

¶ 7. We first address defendant's claim that field-sobriety exercises and PBTs are "searches" under the Fourth Amendment of the United States Constitution and Article 11 of the Vermont Constitution. We have held that the administration of field-sobriety tests is a seizure for the purposes of the Fourth Amendment. *State v. Gray*, 150 Vt. 184, 190, 552 A.2d 1190, 1194 (1988). An officer may administer field-sobriety exercises if he can point to "specific articulable facts" indicating that a suspect is driving under the influence of alcohol. *Id.* at 191, 552 A.2d at 1194.

¶ 8. Whether we classify field-sobriety exercises as a "search" or a "seizure," their administration is the kind of investigatory detention the United States Supreme Court contemplated in *Terry v. Ohio*, 392 U.S. 1, 9 (1968), and by this Court in *Gray*. Such a detention may begin with a consensual encounter between the police and a citizen, as here, or with the investigatory stop of a suspect. Under either circumstance, if the officer can point to factors indicating that a suspect has been involved in wrongdoing — here, driving under the influence of alcohol — the initial encounter can "escalat[e]," with "each inquiry by the officer le[ading] to further evidence justifying further restraints on defendant's freedom until probable cause exist[s] to arrest defendant and process him for DUI." *Gray*, 150 Vt. at 189, 552 A.2d at 1193. The Fourth Amendment and Article 11 determine when an officer may constitutionally escalate the search. In *Gray*, we concluded that "the Fourth Amendment guarantee[] against unreasonable searches and seizures" was satisfied if, before administering field-sobriety exercises, an officer could point to "specific articulable facts" indicating the defendant had been driving under the influence. *Id.* at 191, 552 A.2d at 1194. Defendant's characterization of these exercises as a search, as well as a seizure, does not alter our conclusion that on the highway, pursuant to both the Fourth Amendment and Article 11, the police may administer field-sobriety tests when an officer has reasonable, articulable suspicion that an individual is driving under the influence of alcohol.

¶ 9. We have not yet addressed whether the administration of a PBT is a search or seizure pursuant to either the Fourth Amendment or Article 11. "A [Fourth Amendment] 'search' occurs when an expectation of privacy that society is prepared to

consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); see also *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989) ("Obtaining and examining the evidence may . . . be a search . . . if doing so infringes an expectation of privacy that society is prepared to recognize as reasonable."). Similar principles determine whether a search triggering Article 11 protection has occurred. *State v. Bryant*, 2008 VT 39, ¶ 11, 183 Vt. 355, 950 A.2d 467 ("An Article 11 search occurs when the government intrudes into areas or activities that are the subject of legitimate expectations of privacy." (citations and quotations omitted)). Two issues must therefore be assessed in order to determine whether or not the administration of PBTs constitutes a search: first, whether citizens have an expectation of privacy against the taking and analysis of air from within their persons; and second, whether society recognizes this expectation of privacy as reasonable. What qualifies as a "reasonable expectation of privacy" depends on "both private, subjective expectations and public norms." *Bryant*, 2008 VT 39, ¶ 11 (citation and internal quotations omitted).

■ ¶ 10. The United States Supreme Court has held that "a compelled intrusion into the body for blood to be analyzed for alcohol content" constitutes a search under the Fourth Amendment. *Skinner*, 489 U.S. at 616 (citation and quotation omitted). "In light of our society's concern for the security of one's person, it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." *Id.* The administration of an evidentiary breathalyzer test — which requires the "production of alveolar or 'deep lung' breath for chemical analysis" — raises the same issues, and these tests have also been declared a search by the United States Supreme Court for purposes of the Fourth Amendment. *Id.*

■ ¶ 11. The administration of a PBT raises similar concerns. Like breathalyzer tests, PBTs provide a chemical analysis of a citizen's breath for the purposes of calculating blood-alcohol content. The PBT requires the production of "deep lung" breath and tests it for alcohol content. These processes appear to be no less private than those involved in a breathalyzer or a blood test. The administration of the test — in which one must breathe into a small, chemical-analysis device — is a physical intrusion. Com-

mon recognition of the sanctity of the person leads us to conclude that a PBT "intrudes into [an] area[]" that is the "subject of legitimate expectations of privacy," and thus is a search under both the Vermont and United States Constitutions. *Bryant*, 2008 VT 39, ¶ 11 (citation and quotation omitted).

¶ 12. Having concluded that the administration of a PBT constitutes a search, we must decide when it is "reasonable" for law-enforcement officers to use this investigatory method to collect evidence. In order to determine whether this search is "reasonable" under the Fourth Amendment, we "balanc[e] the need to search . . . against the invasion which the search . . . entails." *Terry*, 392 U.S. at 21 (citation and quotation omitted). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). We similarly balance "the public interest . . . [and] the degree of intrusion into personal privacy" in order to determine whether a search or seizure passes constitutional muster under Article 11. *State v. Williams*, 2007 VT 85, ¶ 7, 182 Vt. 578, 933 A.2d 239 (mem.) (noting also that "[r]easonableness depends upon all the circumstances surrounding each search") (quotations omitted).

¶ 13. "Under both the Vermont and the United States Constitutions, we have recognized that [a] brief detention, its scope reasonably related to the justification for the stop and inquiry, is permitted in order to investigate the circumstances that provoke suspicion." *State v. Ford*, 2007 VT 107, ¶ 4, 182 Vt. 421, 940 A.2d 687 (citation and quotation omitted). In the context of DUI, we have held that, when an officer can point to specific, articulable facts that a suspect is driving under the influence, he may order the suspect to exit his vehicle for the purpose of conducting further investigation. *State v. Sprague*, 2003 VT 20, ¶ 16, 175 Vt. 123, 824 A.2d 539. Given such a reasonable suspicion of DUI, it is also "reasonable" for purposes of the Fourth Amendment for the officer to administer field-sobriety tests as part of that investigation. *Gray*, 150 Vt. at 190-92, 552 A.2d at 1194-95 (concluding that the administration of field-sobriety tests was a seizure within the meaning of the Fourth Amendment, but that such a seizure was "reasonable" if the detaining officer could point to "specific articulable facts" warranting the stop). As we

explained in *Gray*, the level of intrusion occasioned by the administration of the tests was "outweighed by the strong law enforcement interest in attempting to keep a suspected drunk driver off the roads." *Id.* at 191-92, 552 A.2d at 1195.

¶ 14. PBTs are common tools in the investigatory kit officers use to ascertain whether probable cause exists to believe that an individual has been driving under the influence of alcohol. PBTs are "quick and minimally intrusive" yet "perform[] a valuable function as a screening device" to detect drunk driving. *State v. Orvis*, 143 Vt. 388, 391, 465 A.2d 1361, 1362 (1983). This investigative step is completed quickly. The relatively, limited intrusion into a suspect's privacy is outweighed by the important public-safety need to identify and remove drunk drivers from the roads. See *State v. Martin*, 145 Vt. 562, 568, 496 A.2d 442, 447 (1985) (citing *South Dakota v. Neville*, 459 U.S. 553, 558 (1983) (noting the "serious threat posed to public safety" by drunk drivers on public highways)). We thus find it reasonable, under both the Fourth Amendment and Article 11, for an officer to administer a PBT to a suspect if she can point to specific, articulable facts indicating that an individual has been driving under the influence of alcohol.[1]

¶ 15. The trial court concluded that the trooper had "reasonable grounds to request [that d]efendant submit to a [PBT] . . . [and that] [t]he results of that preliminary test provided a further basis to request performance of other field sobriety exercises." These findings are not challenged on appeal.[2] The officer's administration of these tests thus met the constitutional requirements imposed by Article 11 and the Fourth Amendment, and we affirm the denial of the suppression motion on these grounds.

## II.

¶ 16. Defendant next argues that Vermont drivers have a right to refuse to participate in PBTs and field-sobriety exercises when

---

[1] Our standard is reflected in 23 V.S.A. § 1203(f), in which the Legislature specifically stated that a law-enforcement officer may request that a driver take a PBT when the officer has "reason to believe" that the driver has been operating his vehicle while under the influence.

[2] In fact, at oral argument, defendant conceded that the trooper had reasonable suspicion that defendant was driving under the influence before the trooper administered the PBT and field-sobriety exercises.

suspected of DUI. Defendant claims that his participation in these investigative procedures was not voluntary. Accordingly, defendant maintains. that, though he did not refuse to perform these tests, this evidence must be suppressed.

¶ 17. Defendant is correct that he may refuse to submit to these tests. The trooper may not physically force him to perform the field-sobriety exercises or to blow into the PBT device. *State v. Blouin*, 168 Vt. 119, 122, 716 A.2d 826, 828 (1998) (explaining that the "defendant has a right to refuse performance of [field-sobriety exercises] . . . in light of the legitimate nature of the requested physical tests"); see also *Commonwealth v. Blais*, 701 N.E.2d 314, 319 (Mass. 1998) ("The very nature of [field-sobriety tests] makes the use of force to compel their performance obviously inappropriate."). In this case, defendant did not refuse to perform these tests. He argues, however, that his participation was not voluntary. Defendant claims that "environmental factors" surrounding the stop — including his age, intelligence, prior familiarity with the criminal justice system, and the time of day — indicate that his consent was not voluntary, but rather that he submitted to law enforcement authority.

¶ 18. Defendant's failure to challenge the trial court's findings — which clearly support the conclusion that he was not forced to take the PBT nor participate in the field-sobriety exercises — renders his legal argument without force. We dismissed a similar argument in *State v. Badger*, 141 Vt. 430, 450 A.2d 336 (1982). The defendant in *Badger* had confessed to the police twice while being questioned about his involvement in a murder. Both confessions were suppressed, and on appeal, the prosecution challenged solely the suppression of the second confession. The State failed, however, to challenge the factual findings underlying the trial court's decision to suppress the first confession. The court specifically found that (1) the first confession was involuntary due to a number of factors; (2) these same factors were present during the second confession; and (3) *Miranda* warnings issued before the second confession did not purge the taint of illegality in the second confession. Because these unchallenged findings amply supported the lower court's conclusion, and directly contradicted the State's legal claim that the second confession was obtained lawfully, this Court rejected the State's argument. *Id.* at 441-42, 450 A.2d at 343; see also *In re Kasper*, 142 Vt. 31, 37-39, 451 A.2d 1125, 1127-28 (1982) (defendant's claim that he received ineffective

assistance of counsel was without merit, because he failed to challenge factual findings that directly refuted his claims).

¶ 19. Here, the trial court found that "the trooper had reasonable grounds to *request* that [d]efendant submit to a PBT" and that "[t]he trooper did not order [defendant] to perform [the PBT or field-sobriety] tests." (emphasis added). These findings, which are supported by the trooper's testimony at the suppression hearing, directly contradict defendant's claim that his submission to the PBT and field-sobriety tests was less than voluntary. Without a challenge to these findings — or further factual development at the hearing, such as testimony from defendant indicating that he was coerced to participate against his will — we reject defendant's argument that circumstances amounting to no more than a classically mundane police encounter rendered his participation involuntary.

III.

¶ 20. Defendant next argues that he was "in custody" when the trooper informed him, after the administration of the PBT, that his blood-alcohol content was almost twice the legal limit. The trooper's failure to read him his *Miranda* rights at this point, he argues, violated his rights under the Fifth Amendment to the United States Constitution and Article 10 of the Vermont Constitution. Specifically, he claims that the statements he made following the PBT — most notably, his indication that he had had "three or four beers" — should be suppressed. We conclude that the admission of defendant's statements was harmless error.

¶ 21. Any error below — be it of constitutional or nonconstitutional dimension — "which does not affect substantial rights shall be disregarded." V.R.Cr.P. 52(a); see also *State v. Oscarson*, 2004 VT 4, ¶ 30, 176 Vt. 176, 845 A.2d 337 ("For the error to be harmless, the reviewing court must find beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error.").

¶ 22. The suppression of defendant's statements about his alcohol consumption has no bearing on the outcome of his case, because other evidence was sufficient to support the trooper's decision to arrest defendant for DUI. Before the PBT was administered, the trooper observed a strong odor of intoxicants

about defendant's person, noted that defendant had bloodshot and watery eyes, and had trouble understanding defendant because his speech was muddled. Defendant indicated that he had missed the exit for his destination by approximately fifty-five miles. When asked if he had consumed any alcohol, defendant first responded, "not much." On further questioning, he indicated, apparently untruthfully given the immediate and strong odor of intoxicants, that he had had a sip of his mother's pina colada about four hours earlier.

¶ 23. At this point, the PBT was administered. The result of the PBT, by itself, provided "reasonable grounds" for defendant's further detention for the purposes of obtaining an evidentiary test pursuant to 23 V.S.A. § 1202(a)(3). Section 1202(a)(3) requires Vermont drivers to take an evidentiary test — generally, a breathalyzer — when the officer has "reasonable grounds" to believe that person is intoxicated. See also *State v. Orvis*, 143 Vt. at 391, 465 A.2d at 1363 (The "results of a [PBT] which indicate impairment . . . may alone provide the reasonable grounds to believe a person is under the influence of intoxicating liquor."). While defendant's statement that he had "three or four beers" may provide further evidence to support the trooper's conclusion that he was driving under the influence, this statement is not necessary given the number of other indications of impairment. Whether this statement is suppressed thus has no effect on our evaluation of the trooper's decision to arrest defendant, so any potential error was harmless.

## IV.

¶ 24. Defendant's last argument is that the trial court erred in finding that probable cause for the arrest existed before the PBT, regardless of the evidence garnered by the administration of the field-sobriety tests. We do not reach this question because this finding — if erroneous — was also harmless error.

¶ 25. The trial court concluded that defendant's participation in the PBT and field-sobriety exercises was not compelled, and defendant does not contest those findings here. See *supra*, ¶¶ 18-19. Based on these findings, the trial court denied defendant's motion to suppress the results of the PBT and field-sobriety tests. Considering defendant's poor performance in these exercises, there is no question that the trooper had probable cause to

arrest after the administration of the field-sobriety tests. The trial court's statement that probable cause also existed earlier during the encounter between trooper and defendant does not change the outcome — either way, the trooper had probable cause to make the arrest when he did.

*Affirmed.*