2009 VT 96A

# State of Vermont v. Epeli Mara

[987 A.2d 939]

No. 08-373

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 18, 2009

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellant.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Jeffrey Rubin*, Law Clerk, Montpelier, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** The State of Vermont appeals from a district court order granting defendant's motion to suppress and dismissing the civil suspension action pending against him. We reverse.

¶ 2. The district court found the following facts. On May 2, 2008, at 12:42 a.m., defendant was driving in Burlington in a vehicle with a cracked taillight. A state trooper, aware that this was a violation, pulled defendant over. Upon approaching defendant's vehicle, the trooper observed that the inspection sticker had expired in February 2008. The trooper did not observe any erratic driving or have any other reason to suspect that defendant was intoxicated. When the trooper spoke with defendant through the passenger-side window, however, he smelled alcohol. The trooper then moved to the driver's side of the vehicle, where he continued to smell alcohol and observed that defendant's eyes were watery and bloodshot. The trooper also observed that the odor was coming from defendant's person. The odor, according to the trooper, was "moderate." Defendant's speech was normal, and he was able to respond to questions without difficulty. In response to the trooper's initial questioning, defendant stated that he had consumed twenty-four ounces of beer earlier in the evening between 4:00 and 6:00 p.m. There were no alcoholic beverage containers visible in the vehicle.

¶ 3. The trooper ordered defendant out of his car to administer standard field sobriety tests: the "walk and turn" test, the "one-leg stand" test, and a horizontal gaze nystagmus (HGN) test. Defendant did not fail either of the first two tests, but did fail the HGN test. At 12:56 a.m., fourteen minutes after the initial stop, the trooper asked defendant to submit to a preliminary breath test (PBT). Defendant complied, and the trooper recorded defendant's blood alcohol content as 0.102, which is over the legal limit. The trooper concluded that he had probable cause to arrest defendant for violating 23 V.S.A. § 1201(a)(2) (prohibiting operation of a vehicle while under the influence of alcohol), and brought him to the station for processing. At the station, an evidentiary breath test was administered at 1:39 a.m., yielding a blood alcohol content of 0.107. Defendant was charged with violating § 1201(a)(1) (prohibiting operation of a vehicle while having a blood alcohol content of 0.08 or more). The criminal charge was consolidated with the related civil-suspension proceeding. See *id.* § 1206(a).

¶ 4. Defendant moved to suppress all of the evidence against him and to dismiss both the criminal and civil cases against him.

He argued, in relevant part, that the officer had no basis to order any field sobriety tests and that, even if some testing was warranted, after defendant had passed the "walk and turn" and "one-leg stand" tests, the trooper did not have any "reason to believe" that defendant had been driving under the influence, and therefore violated defendant's rights in requiring him to submit to a preliminary breath test. See 23 V.S.A. § 1203(f) ("When a law enforcement officer has reason to believe that a person may be violating or has violated section 1201 of this title, the officer may request the person to provide a sample of breath for a preliminary screening test."). This assertion rested on defendant's contention that his failure of the HGN test must be suppressed because of the unreliability of that test, and that apart from the HGN result the trooper had no reason to believe that defendant had committed DUI and therefore no reason to perform the PBT.

¶ 5. In an August 11, 2008 decision, the district court granted defendant's motion and dismissed both the civil suspension and the criminal complaint. In ruling on the motion, the court concluded that defendant's admission to drinking two beers, the moderate odor of alcohol emanating from defendant, and defendant's watery, bloodshot eyes, taken together, were "sufficient indicia of possible alcohol intoxication in violation of 23 V.S.A. § 1201 to issue the exit order and investigate further." The court went on to rule, however, that the officer's suspicion of DUI had dissipated, as a matter of law, before the trooper administered the PBT. The court concluded that under the totality of the circumstances known to the officer at the time, the "indicia of sobriety [were] compelling" and that therefore the "encounter . . . should have ended" before the officer administered the PBT. This conclusion depended on: (1) the trial court's earlier conclusion that the trooper would not be permitted to testify about the HGN results because insufficient foundation had been laid, and (2) the conclusion that without the HGN results the trooper had no reason to suspect DUI at the time he ordered the PBT. The State appealed.[1]

---

[1] On August 14, 2008, three days after the district court issued its decision, the State filed a motion for permission to take an interlocutory appeal from the decision. Four days later, the State filed a separate notice of appeal from the order dismissing the civil suspension action. The court initially granted the August 14 motion for permission to appeal but later vacated its order granting the appeal. Accordingly, the State is appealing only from the parts of the district court's order

¶ 6. We review the district court's disposition of the motion to suppress under familiar standards: the court's legal conclusions are reviewed de novo, and the findings of fact will be upheld unless clearly erroneous. *State v. McGuigan*, 2008 VT 111, ¶ 6, 184 Vt. 441, 965 A.2d 511. It is a question of law whether the facts as found met the proper standard to justify a particular police action. *State v. Davis*, 2007 VT 71, ¶ 5, 182 Vt. 573, 933 A.2d 224 (mem.). In the DUI context, a brief investigative detention is "justified if a police officer has a reasonable and articulable suspicion of criminal activity," *State v. Pratt*, 2007 VT 68, ¶ 5, 182 Vt. 165, 932 A.2d 1039, and may include a preliminary breath test if the officer has "reason to believe" that a person is driving under the influence. 23 V.S.A. § 1203(f).

¶ 7. Here, the court found that defendant's breath smelled moderately of alcohol, that his eyes were watery and bloodshot, and that he admitted to having drunk twenty-four ounces of beer earlier in the evening. The court also found, however, that defendant passed both the "walk-and-turn" and "one-leg stand" tests and showed no other signs of impairment, either behind the wheel or in his interactions with the officer. Thus, the court concluded that under the totality of the circumstances the officer's reasonable suspicion of DUI — which the court found was proper at the time of the exit order — had dissipated before the trooper administered the PBT. This conclusion was contrary to our law and is hereby reversed.

¶ 8. The district court's conclusion here is very similar to one we rejected in *State v. Orvis*, 143 Vt. 388, 465 A.2d 1361 (1983). There, we upheld the administration of a PBT on a driver who had exhibited no external signs of drunkenness, was "cooperative" and "in control of his faculties," but who emitted a "faint" odor of alcohol and admitted to having drunk six beers over the course of roughly twelve hours. *Id.* at 389, 465 A.2d at 1361-62. No field dexterity tests were given in *Orvis*; rather the arresting officer simply administered a PBT immediately after ordering the defendant to exit his vehicle. The defendant in *Orvis* contended that suppression of the PBT was required "if there is evidence to find reasonable grounds for sobriety." *Id.* at 390, 465 A.2d at 1362. We held, however, that external manifestations of drunkenness are

granting defendant's motion to suppress and dismissing the civil license suspension action.

not required for an officer to have a reasonable suspicion of DUI and to administer a PBT. *Id.* at 391, 465 A.2d at 1362-63. We noted that to hold otherwise would "be to reward the experienced drinker who consumes excessive amounts of intoxicants without obvious physical impairment." *Id.* at 391, 465 A.2d at 1363. We characterized the PBT as "a quick and minimally intrusive investigative tool which performs a valuable function as a screening device," and noted that our Legislature had generally encouraged the use of chemical analysis in DUI investigations. *Id.* at 391, 465 A.2d at 1362 (citing *McGarry v. Costello*, 128 Vt. 234, 240, 260 A.2d 402, 405 (1969)).

█ █ ¶ 9. The district court's conclusion, if affirmed, would create a very uncertain landscape for officers in the field. The trooper here, for example, would have been justified under the district court's analysis to administer the PBT immediately after ordering defendant out of his vehicle, but *not* fourteen minutes later after administering the field dexterity tests. We cannot affirm the district court's conclusion that the trooper's suspicion of DUI became unreasonable for the sole reason that defendant passed two field sobriety tests. Rather, the trooper was still faced with a situation in which a driver smelled of alcohol, had watery and bloodshot eyes, and admitted to drinking alcohol. The trooper testified that his training and experience suggested that the first two factors indicated possible impairment, and the third required no such training or experience to militate in favor of further investigation. Cf. *McGuigan*, 2008 VT 111, ¶ 22 (noting that the defendant's assertion "that he had had a sip of his mother's pina colada about four hours earlier" was "apparently untruthful[]" in light of the "strong odor of intoxicants" about him, and thus did not mandate suppression of PBT results). Certainly a driver's mere assertion that he has not drunk to excess need not be accepted at face value by an officer who observes other indicia of impairment.

█ ¶ 10. Although defendant's performance on the walk-and-turn and one-leg-stand tests might not, by itself, have supported a reasonable suspicion of DUI, it also did not as a matter of law compel the trooper to cease his roadside investigation. Although defendant did not "fail" the tests, his performance was not flawless, and the officer need not evaluate the test results in a binary fashion. See, e.g., *County of Jefferson v. Renz*, 603 N.W.2d

541, 543, 552 (Wis. 1999) (admitting PBT results where PBT was administered by officer relying in part on the defendant's imperfect but still "passing" performance on field-sobriety tests). Rather, the officer must interpret the test results based on his training and experience in light of the totality of the circumstances, and some discretion inheres in that interpretation. As the Kansas Supreme Court has held in evaluating its reasonable-suspicion standard:

> Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious, but to determine whether the totality of the circumstances justify the detention. We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, remembering that reasonable suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence.

*State v. DeMarco*, 952 P.2d 1276, 1282 (Kan. 1998) (quotations and citations omitted).

■ ■ ¶ 11. Here, "balancing the public's interest in safety against the relatively minimal intrusion," *Pratt*, 2007 VT 68, ¶ 5 (quotation omitted), of the PBT, we conclude that the results of the PBT should have been admitted. Administering a PBT to a driver who has already performed three other field-sobriety tests and who is already out of his vehicle is a very slight intrusion, especially when weighed against the public's compelling interest in having drunk drivers off the roads. See *McGuigan*, 2008 VT 111, ¶ 14 ("PBTs are quick and minimally intrusive . . . ." (quotation omitted)). We have noted in several cases the paramount importance of swiftly removing drunk drivers from the roadways of our state because of the imminent danger they pose to others. See, e.g., *State v. Boyea*, 171 Vt. 401, 409, 765 A.2d 862, 867 (2000) ("Indeed, a drunk driver is not at all unlike a 'bomb,' and a mobile one at that."); *State v. Lamb*, 168 Vt. 194, 199, 720 A.2d 1101, 1104 (1998) ("'A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible.'" (quoting *State v. Tucker*, 878 P.2d 855, 861 (Kan. Ct. App. 1994)). The trooper's decision to administer the PBT to defendant

rather than allow him to continue driving was premised on a reasonable suspicion of DUI, imposed a minimal intrusion on defendant's liberty, and was aimed at preventing serious danger to the public. It did not violate either the Vermont or the United States Constitution.

¶ 12. Because we conclude that the odor of alcohol, admission to drinking, and watery and bloodshot eyes provided a sufficient basis for the trooper to proceed with the PBT, we need not consider whether the district court properly suppressed the trooper's testimony concerning the results of the HGN test.[2]

*Reversed and remanded.*

---

[2] Defendant did not contend at the suppression hearing that the officer would not have administered the PBT but for the HGN test, which defendant failed. Because the issue was not raised, the record is virtually bereft of evidence that would bear on this question. The trooper's testimony, after the HGN results were suppressed, was simply that he "administered a preliminary breath test based on the totality of my talking to [defendant]." On cross-examination the defense did not in any way question the trooper about the role the HGN test played in his decision to administer the PBT, nor did the defense suggest that the HGN test had tainted the later test. Thus, we do not consider the question. Cf. *State v. Pitts*, 2009 VT 51, ¶¶ 20-21, 186 Vt. 71, 978 A.2d 14 (analyzing, with benefit of factual development at suppression hearing, question of whether illegal search of defendant's person tainted subsequent search of residence).