2009 VT 104

**STATE of Vermont v. Richard SANTIMORE**

[987 A.2d 332]

Nos. 09-063 & 09-064

¶ 1. November 3, 2009. Defendant appeals from a decision by the Chittenden District Court denying his motion to suppress the results of a preliminary breath test and the results of subsequent field-sobriety tests and to dismiss his civil suspension and criminal driving under the influence (DUI) charge. We affirm.

¶ 2. On November 26, 2008, a law enforcement officer for the Town of Milton observed defendant's vehicle exceeding the posted speed limit. The officer pulled the vehicle over and, after observing what the officer described as "the odor of alcohol or intoxicants coming from [defendant]" and defendant's "bloodshot and watery" eyes, the officer asked defendant if he had been drinking. Defendant responded that he had drunk one beer. The officer then proceeded to administer a preliminary breath test (PBT) to defendant while defendant remained in his vehicle. The PBT indicated a blood alcohol content of 0.106, an amount above Ver-

mont's legal limit of 0.08. See 23 V.S.A. § 1201(a)(1). The officer then asked defendant to exit the vehicle, and the officer administered several dexterity tests. After defendant's poor performance on these tests, the officer decided to process defendant for DUI.

¶ 3. Defendant moved to suppress the results of the PBT and dexterity tests and to dismiss his civil suspension and criminal DUI charge. Following a suppression hearing, the district court denied defendant's motion and upheld the civil suspension. Defendant subsequently entered a conditional guilty plea to the criminal DUI charge and was fined three hundred dollars.

¶ 4. On appeal, defendant argues that the district court applied the incorrect legal standard governing the administration of breath tests. Defendant contends that the requirement of 23 V.S.A. § 1203(f) that an officer have "reason to believe" a suspect is intoxicated before administering a PBT is more stringent than the "reasonable, articulable suspicion" standard employed by the district court. Defendant argues that under a more stringent standard the facts did not support the officer's administration of the PBT. Defendant also argues that even under the "reasonable, articulable suspicion" standard the facts still did not support the officer's administration of the PBT.

¶ 5. When reviewing a denial of a motion to suppress, we will uphold the trial court's findings of fact unless they are clearly erroneous and will review the trial court's legal conclusions de novo. *State v. McGuigan*, 2008 VT 111, ¶ 6, 184 Vt. 441, 965 A.2d 511 (citing *State v. Lawrence*, 2003 VT 68, ¶¶ 8-9, 175 Vt. 600, 834 A.2d 10 (mem.)).

¶ 6. Vermont law governing the administration of a PBT provides the following:

> When a law enforcement officer has reason to believe that a person may be violating or has violated section 1201 of this title, the officer may request the person to provide a sample of breath for a preliminary screening test . . . . The results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made and whether to request an evidentiary test . . . . Following the screening test additional tests may be required of the operator pursuant to the provisions of section 1202 of this title.

23 V.S.A. § 1203(f).

¶ 7. A PBT involves a chemical analysis of an individual's breath to determine blood alcohol content. Because the administration of the test involves a physical intrusion, we have concluded that it is a "search" under both the Vermont and United States Constitutions. See *McGuigan*, 2008 VT 111, ¶ 11. A driver may refuse to submit to this test. 23 V.S.A. § 1202(b). In determining whether the administration of a PBT is reasonable under both Article 11 of the Vermont Constitution and the Fourth Amendment to the United States Constitution, we have recognized the need to balance the intrusion into a suspect's privacy with "the important public-safety need to identify and remove drunk drivers from the roads." *McGuigan*, 2008 VT 111, ¶ 14. In *McGuigan*, we explained that when an officer can identify articulable facts that a suspect is driving under the influence, the officer may administer both a PBT and field-sobriety tests. *Id.* ¶¶ 8, 14. In employing this "reasonable, articulable suspicion" standard, we noted that this standard was consistent with § 1203(f). *Id.* ¶ 14 n.1.

¶ 8. Indicia of intoxication, such as an officer's detection of the odor of alcohol emanating from a driver as well as observation of a driver's watery and bloodshot eyes, are sufficient to establish reason-

able suspicion of DUI. See *State v. Mara*, 2009 VT 96A, ¶ 12, 186 Vt. 389, 987 A.2d 939 (concluding that odor of alcohol, admission to drinking, and watery and bloodshot eyes provided sufficient basis for trooper to administer PBT); *State v. Orvis*, 143 Vt. 388, 390, 465 A.2d 1361, 1362 (1983) (concluding that mild odor of alcohol, defendant's excited state, and his admission of consumption of alcohol contributed to provide "reasonable grounds for further inquiry by a law enforcement officer").

¶ 9. As an initial matter, we reject defendant's argument that the language of § 1203(f) compels a more stringent standard to justify the administration of the PBT. When the words of a statute are clear, this Court will enforce the statute's plain meaning in order to implement the intent of the Legislature. *Shahi v. Madden*, 2008 VT 25, ¶ 19, 183 Vt. 320, 949 A.2d 1022 ("We presume that the Legislature intended the plain, ordinary meaning of the language and will enforce the plain meaning of the statutory language where the Legislature's intent is evident from it." (quotations and citation omitted)). Section 1203(f) requires an officer to have "reason to believe" that a person "may be" driving under the influence. The plain meaning of these words indicates that an officer need not have incontrovertible proof of the underlying offense. He need not even have probable cause of the DUI. At the point a PBT is administered, the officer needs only to have some basis for believing that a suspect *may* be driving under the influence. This basis can also be expressed as reasonable, articulable facts supporting the belief that criminal behavior is afoot. See *McGuigan*, 2008 VT 111, ¶ 14 n.1 (noting that standard requiring officer to point to "specific, articulable facts" is reflected in Legislature's decision allowing officer to administer a PBT when he has "reason to believe" that the driver has been operating a vehicle while under the influence).

The statute's language indicates the Legislature's intent to balance the privacy rights of motorists with the important public safety interest in keeping intoxicated drivers off of Vermont's roads. Given the minimally invasive nature of the test, requiring an officer to articulate more than reasonable suspicion of DUI would effectively convert the PBT from a screening device to a mere confirmation of intoxication.

¶ 10. Moreover, construing the statute as requiring reasonable articulable suspicion of DUI is in keeping with the other provisions of § 1203(f). After an officer conducts the PBT, an officer may use the results in deciding whether to arrest the driver, whether to order an evidentiary test, or whether to conduct additional sobriety tests. 23 V.S.A. § 1203(f). The PBT is thus one minimally intrusive step in the investigatory process. See *State v. Gray*, 150 Vt. 184, 189, 552 A.2d 1190, 1193 (1988) (noting that a detention may begin with a routine investigatory stop and may escalate, with "each inquiry by the officer [leading] to further evidence justifying further restraints on defendant's freedom until probable cause exist[s] to arrest defendant and process him for DUI").

¶ 11. Here, the officer lawfully detained defendant for the motor vehicle infraction of speeding. The officer smelled alcohol coming from defendant and observed that defendant's eyes were bloodshot and watery. Defendant does not argue that these findings are clearly erroneous. These observations were enough to provide the officer with reasonable suspicion that defendant had been driving under the influence and justified administration of the PBT and the subsequent dexterity tests. The results of those tests (including a 0.106 blood alcohol content and failure of six measures of dexterity) combined with the other observed indicia of intoxication provided the officer with probable cause to arrest defendant for DUI.

*Affirmed.*