2011 VT 120

## State of Vermont v. William N. Therrien, Jr.

[38 A.3d 1129]

Nos. 10-401 & 11-003

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 4, 2011

---

*David J. Cahill*, Windsor County Deputy State's Attorney, and *Molly E. Watson*, Law Clerk (On the Brief), White River Junction, for Plaintiff-Appellee.

*Brian R. Marsicovetere* of *Griffin, Marsicovetere & Wilkes, P.C.*, White River Junction, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals the civil suspension of his driver's license and his conviction for driving under the influence of intoxicating liquor (DUI). Defendant argues that the trial court erred in denying his motion to suppress all evidence obtained after administration of a preliminary breath test (PBT) because the State failed to prove that defendant voluntarily consented to take the PBT. We affirm.

¶ 2. The court found the following facts. At 12:20 a.m., a Vermont state trooper stopped defendant's vehicle after observing that a rear taillight was out. The entire roadside encounter was video and audio recorded. When the officer approached the vehicle, he observed that defendant's eyes were "extremely watery," and there was a strong odor of alcohol coming from the car. The trooper observed an empty beer container right behind the passenger's seat, and defendant advised that he had consumed one beer after leaving work. The trooper went back to his cruiser and returned with a preliminary breath test machine. He put the machine in front of defendant and told defendant to take the test. He also provided defendant with instructions on how to proceed. The trooper did not ask defendant if he consented to take the test or advise defendant that he had a right to refuse. The court found that defendant did not think he had a choice and therefore provided a sample of his breath. The PBT indicated that defendant's blood alcohol was above the legal limit. The officer then conducted field sobriety tests. The officer's affidavit indicates that defendant's performance was poor and caused the officer to conclude that, in his opinion, defendant's impairment was "substantial." Defendant was arrested for DUI and agreed to provide an evidentiary breath sample, which produced a result of .150.

¶ 3. Defendant filed a motion to suppress in the criminal and civil suspension cases. He argued that there were insufficient facts to support administering a PBT and that he did not voluntarily consent to the PBT, and therefore that all evidence obtained thereafter should be suppressed. At the hearing, the recording of the traffic stop was played. Defendant testified that he felt he did

not have a choice as to whether to take the PBT. The trooper testified that he did not force defendant to take the PBT, and if defendant had refused he would not have made defendant blow into the machine. On cross-examination, he agreed, however, that it was possible that citizens in defendant's situation could perceive that they were required to take the PBT. The trooper explained that if he had a reasonable suspicion of DUI from observations of a motorist, then he often administered a PBT before asking someone to exit the vehicle to conduct field sobriety tests.

¶ 4. The trial court made findings and issued its decision on the record. The court concluded that the smell of alcohol, the empty beer container, defendant's watery eyes, and defendant's admission to drinking provided a reasonable basis to administer the PBT because they were articulable facts to provide reasonable suspicion of DUI. The court further held that although defendant had a right to refuse the test, the officer was not required to affirmatively notify defendant of this right. As a result, the court did not require the State to prove that defendant voluntarily consented to administration of the test. Therefore, the court denied the motion and entered judgment in the civil suspension case. Defendant entered a conditional guilty plea on the criminal conviction, and now appeals the denial of his motion to suppress.

¶ 5. On appeal from denial of a motion to suppress, we review the trial court's legal conclusions de novo and will uphold its findings of fact unless clearly erroneous. *State v. Lawrence*, 2003 VT 68, ¶ 9, 175 Vt. 600, 834 A.2d 10 (mem.). "It is a question of law whether the facts as found met the proper standard to justify a particular police action." *State v. Mara*, 2009 VT 96A, ¶ 6, 186 Vt. 389, 987 A.2d 939.

¶ 6. On appeal, defendant argues that the PBT was improperly obtained because the State failed to demonstrate that he voluntarily submitted to the test. According to defendant, because a PBT is a search, law enforcement may administer a test only when there is a reasonable suspicion of DUI based on articulable facts *and* the suspect has voluntarily consented to giving a breath sample for the PBT.

¶ 7. Defendant is correct that a PBT is a search. *State v. McGuigan*, 2008 VT 111, ¶ 11, 184 Vt. 441, 965 A.2d 511. Not all searches, however, are unconstitutional. " 'Under both the Vermont and the United States Constitutions, we have recognized that a

brief detention, its scope reasonably related to the justification for the stop and inquiry, is permitted in order to investigate the circumstances that provoke suspicion.' " *Id.* ¶ 13 (alteration omitted) (quoting *State v. Ford*, 2007 VT 107, ¶ 4, 182 Vt. 421, 940 A.2d 687). Because of the strong interest in public safety and the minimal intrusion of the test, administering a PBT is reasonable under both the Fourth Amendment and Article 11 of the Vermont Constitution if an officer "can point to specific, articulable facts indicating that an individual has been driving under the influence of alcohol." *Id.* ¶ 14. In this case, the court concluded that the odor of alcohol, the empty beer container, and defendant's watery eyes and admission to drinking provided an adequate basis for the trooper to proceed with the PBT. See *Mara*, 2009 VT 96A, ¶ 12 (concluding that similar facts provided sufficient basis to administer PBT). Defendant does not challenge this conclusion on appeal.

¶ 8. Instead, defendant contends that in addition to reasonable suspicion, an officer must also obtain defendant's voluntary consent before administering a PBT. According to defendant, under the totality of the circumstances, he did not voluntarily submit to the PBT. See *State v. Sole*, 2009 VT 24, ¶ 23, 185 Vt. 504, 974 A.2d 587 (listing some circumstances relevant to voluntary consent determination, including "defendant's age, intelligence, and emotional state, as well as the actions of law-enforcement officials"). We conclude that the State was not required to affirmatively prove voluntary consent in this case. Consent is another means of satisfying the reasonableness requirement of the Fourth Amendment. See *State v. Sprague*, 2003 VT 20, ¶ 23, 175 Vt. 123, 824 A.2d 539 (explaining that where search is not supported by reasonable suspicion, voluntary consent can provide another means to justify search). Because the constitutional standard had already been met by reasonable suspicion, there was no additional requirement to obtain voluntary consent. See *Ford*, 2007 VT 107, ¶ 7 (holding that State was not required to prove consent where stop was supported by reasonable suspicion that a crime had been committed).

¶ 9. Our resolution of the constitutional question does not, however, fully determine the case because the administration of a PBT is governed by statute. The relevant statute provides that when an officer "has reason to believe that a person" has committed DUI, then the officer "may request the person to

provide a sample of breath for a preliminary screening test." 23 V.S.A. § 1203(f). The interpretation of a statute is a question of law that we review de novo. *State v. Eldredge*, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816. "When interpreting a statute our goal is to give effect to the intent of the Legislature, and to do so we first look at the plain, ordinary meaning of the statute. If the plain language is clear and unambiguous, we enforce the statute according to its terms." *Id.* (citation omitted).

¶ 10. We need look no further than the plain language of the statute to conclude that when an officer has a reasonable suspicion of DUI, he may "request" that the suspect provide a breath sample, but not order such participation. This conclusion is in keeping with our prior interpretation of this statutory language, which delineates that drivers may not be forced to comply with a request to take a PBT and have a right to refuse to take the PBT. *McGuigan*, 2008 VT 111, ¶ 17. Thus, even though there is no statutory or constitutional obligation on law enforcement to inform suspects of their right to refuse, see *Sprague*, 2003 VT 20, ¶ 29 (explaining that even in the context of obtaining consent, law enforcement is not required to inform a suspect of his right to refuse), law enforcement officers must "request" — rather than order — a detained motorist to provide a breath sample for a PBT. 23 V.S.A. § 1203(f).

¶ 11. In this case, the court's unchallenged findings are that the officer did not ask defendant to submit to a PBT. The court found that the officer simply "put the PBT up to [defendant]" and that defendant "was not specifically asked if he would like to take the test." Because the trooper failed to request that defendant take the test, his actions contravened the statute's directive. Cf. *McGuigan*, 2008 VT 111, ¶ 19 (explaining that administration of PBT was supported by factual findings that trooper did not order defendant to take PBT). Therefore, the PBT was improperly obtained and the result should not have been considered in the court's determination of whether there was sufficient probable cause to arrest defendant for DUI.

¶ 12. The error, however, is harmless. The basis for probable cause to arrest is detailed in the officer's affidavit and, in addition to the PBT, includes the officer's observations of defendant, and the results of the field sobriety tests, which strongly indicated that defendant was impaired. The reasonable suspicion

to conduct the field sobriety tests did not depend on the outcome of the PBT. Just as the officer's observations — the odor of alcohol, defendant's watery eyes, the empty alcohol container, and defendant's admission of drinking — provided reasonable suspicion to request a PBT, they also provided reasonable suspicion to conduct field sobriety tests. See *State v. Gray*, 150 Vt. 184, 191, 552 A.2d 1190, 1194-95 (1988) (concluding that it was reasonable to conduct field sobriety tests based on observation of defendant driving on curb, odor of alcohol, and empty beer bottles in defendant's truck). Defendant's poor performance of the dexterity tests combined with the officer's other observations provided probable cause to arrest defendant for DUI. See *id.* at 192, 552 A.2d at 1195 (concluding that poor dexterity tests combined with prior observations provided probable cause to arrest for DUI). The unlawful administration of the PBT did not affect defendant's choice to take the evidentiary test and did not undermine the criminal charge. Therefore, suppression is inappropriate. See *State v. May*, 2005 VT 50, ¶ 11, 178 Vt. 575, 878 A.2d 250 (mem.) (explaining that where the improper act has no "negative consequences to the criminal charge" suppression is not appropriate remedy).

*Affirmed.*