NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 56

No. 24-AP-249

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Karen Norton | June Term, 2025 |

David R. Fenster, J. (motion to suppress); Robert W. Katims, J. (final judgment)

Dennis Wygmans, Department of State's Attorneys and Sheriffs, Montpelier, for
  Plaintiff-Appellee.

Matthew Valerio, Defender General, and Briana Hauser, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **EATON, J.**  Defendant was arrested for suspicion of driving under the influence after a police officer observed the passenger-side wheels of defendant's car leave the paved portion of the road twice in quick succession.  Defendant moved to suppress the evidence collected during the traffic stop and dismiss the case, arguing that the arresting officer did not have reasonable suspicion to stop her.  The trial court denied defendant's motion and, after entering a conditional guilty plea, defendant appealed to this Court.  Defendant argues that the officer lacked reasonable suspicion to believe defendant was driving while impaired or that she committed a traffic violation. Because we conclude that the officer had reasonable suspicion to believe defendant was driving while impaired, we do not reach defendant's second argument.  We affirm the trial court's decision.

¶ 2.     Following a traffic stop, defendant was charged with driving under the influence (DUI) and driving with a suspended license.  She moved to suppress the evidence against her, asserting that the arresting officer lacked reasonable suspicion to stop her.  Following a hearing, the court denied the motion and made the following findings, which are undisputed unless otherwise noted.

¶ 3.     Shortly after 11 p.m. on May 18, 2023, a police officer arrested defendant on suspicion of DUI in violation of 23 V.S.A. § 1201.  The officer was patrolling Panton Road in Vergennes—a road marked only by a center line and without any fog line or other markings at the edge of the pavement.  The officer observed defendant's truck weaving such that the passenger-side tires went off the paved road twice.  Specifically, the officer described that "the passenger side tires went off the side of the paved . . . side of the road," the car "weaved back into [the] lane," "weaved toward the center line," and then "weave[d] again [and was] off the travel portion of the roadway with the passenger side."  The officer decided to stop defendant's vehicle because, to the officer, the car deviating from the paved road was "an indicator of possible impairment" and because she believed defendant had committed a traffic violation by leaving the road.  In total, eighteen seconds elapsed between the moment the officer first saw defendant's car and when the officer engaged her cruiser lights.  The officer's cruiser camera recorded the eighteen seconds of observation.[1]

¶ 4.     The court recognized that the officer had a "number of certifications involving the detection of driving under the influence, including the DUI training, the ARIDE training and the DRE training" and had conducted over 500 traffic stops.  The court explained that the officer

---

[1] In its ruling from the bench, the court noted that "given the quality of the video," it was "not clear that someone watching the video . . . would necessarily identify what had happened" "without the benefit of the testimony."  However, the court found the officer's testimony to be credible, reasoning that "while the video . . . may not perfectly clearly depict those moments . . . what can be seen on the video is consistent with the testimony."

observed and articulated clearly objective facts—namely, the car's passenger-side wheels leaving the paved portion of the road twice—that demonstrated erratic driving and based on the officer's training and experience, "created a reasonable and articulable suspicion that the operator of the vehicle was impaired."[2]

¶ 5. Following the court's ruling, defendant entered a conditional guilty plea to the DUI charge and appealed the denial of her motion to suppress.[3]

¶ 6. The denial of a motion to suppress involves a mixed question of fact and law. "We accept the trial court's findings of fact unless they are clearly erroneous, but we review the question of whether the facts meet the proper legal standard without deference to the trial court." State v. Calabrese, 2021 VT 76A, ¶ 19, 216 Vt. 84, 268 A.3d 565. The court's findings about video evidence are similarly reviewed for clear error. Swett v. Gates, 2023 VT 26, ¶ 23 n.1, 218 Vt. 76, 297 A.3d 944 (explaining standard for reviewing trial court's findings concerning video evidence is same as with other evidence presented: "[w]e make no appellate findings based on our viewing of the video but rather consider whether the [trial] court's findings are supported by the record and not clearly erroneous, and, if so, whether they, in turn, support the court's legal conclusion." (quotation omitted)). "The question of whether the facts as found [meet] the proper standard to justify a stop is one of law." State v. Rutter, 2011 VT 13, ¶ 6, 189 Vt. 574, 15 A.3d 132 (quotation omitted).

---

[2] On appeal, the parties disagree whether the court held that defendant's driving was a traffic violation under 23 V.S.A. § 1038(1) ("Whenever any roadway has been divided into two or more clearly marked lanes for traffic[,] . . . [a] vehicle shall only be driven, as nearly as practicable, entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety."). Because we conclude that there was reasonable suspicion for the stop even in the absence of a traffic violation, we do not reach this dispute.

[3] The State dismissed the charge against defendant for driving with a suspended license with prejudice.

3

¶ 7.    "A legal investigatory stop is justified if a police officer has a reasonable and articulable suspicion of criminal activity." State v. Pratt, 2007 VT 68, ¶ 5, 182 Vt. 165, 932 A.2d 1039 (citing State v. Bruno, 157 Vt. 6, 11, 595 A.2d 272, 275 (1991)); see also Terry v. Ohio, 392 U.S. 1, 21 (1968).  The State bears the burden of justifying the traffic stop.  State v. Harris, 2009 VT 73, ¶ 6, 186 Vt. 225, 980 A.2d 785.  "The officer must have more than an unparticularized suspicion or hunch of criminal activity, but needs considerably less than proof of wrongdoing by a preponderance of the evidence."  Pratt, 2007 VT 68, ¶ 5 (quotation omitted).  "Reasonable suspicion is assessed by examining the totality of the circumstances."  Id. (citing State v. Lamb, 168 Vt. 194, 196-97, 720 A.2d 1101, 1103 (1998)).  "The potential risk of harm to the defendant and the public is widely acknowledged to be a critical factor in assessing the reasonableness of an investigatory stop."  Lamb, 168 Vt. at 199, 720 A.2d at 1104.

¶ 8.    As described above, the arresting officer based the stop on two separate grounds: she suspected defendant was impaired and she suspected that defendant committed a traffic violation.  Because we conclude that the officer had reasonable suspicion to believe defendant was driving while impaired, we do not consider an alternative justification for the stop.

¶ 9.    "[W]e have upheld investigatory stops for suspicion of DUI based on erratic driving."  Pratt, 2007 VT 68, ¶ 5.  We cited the dictionary definition of "erratic" as "[h]aving no certain course; wandering; moving."  State v. Boyea, 171 Vt. 401, 410, 765 A.2d 862, 868 (2000) (quoting erratic, Webster's New Int'l Dictionary 869 (2d ed. 1955)).  In Pratt, an officer "observed [the] defendant drift back and forth within his lane several times over a distance of approximately five miles," which justified reasonable suspicion of impairment and was sufficient for a traffic stop.  2007 VT 68, ¶ 6.  We noted that courts around the country similarly held that "repeated intra-lane weaving can create reasonable suspicion of impaired operation."  Id. ¶ 7 (collecting cases).  However, we recognized that "isolated incidents of conduct or conduct less clearly related to

4

impairment" might not suffice and that "slight degrees of intra-lane weaving alone do not justify a stop." Id. ¶¶ 7, 8.

¶ 10. In the instant case, defendant's vehicle did not merely weave "within" the lane. Instead, the passenger-side tires left the paved portion of the road on two separate occasions in quick succession. This was "erratic" driving as the car had "no certain course," was "wandering" from the typical path that one would take along a straight road, and "moving" in an unpredictable way by leaving the road. Boyea, 171 Vt. at 410, 765 A.2d at 868 (quotation omitted). Here, defendant's repeated deviation from the paved portion of the road appears even more erratic than the defendant's conduct in Pratt, where the defendant's car "drift[ed] back and forth within his lane several times" but did not leave the lane. 2007 VT 68, ¶¶ 3, 6. Thus, as in Pratt, we conclude that the court's findings here support the conclusion that the officer had reasonable suspicion to stop defendant.

¶ 11. Defendant suggests that the officer was required to observe "intra-lane weaving," "veering," or "swerving" before she could have reasonable suspicion defendant was driving while impaired. We reject that argument. The court was not required to make such findings before defendant's driving could be considered "erratic." As set forth above, we consider the totality of the circumstances, and erratic driving can certainly encompass the passenger-side tires going off the side of the straight paved road more than once in a short period of time without any obvious justification for that behavior. See id. ¶ 5.

¶ 12. Defendant also argues that the officer failed to identify "multiple articulable facts indicating erratic driving or repeated conduct over a longer period of observation to support the stop." We disagree. The officer here pointed to multiple articulable facts: defendant's car left the paved portion of the road, weaved back onto the road, approached close to the center line, and then went off the paved portion of the road once again on a straight portion of the road.

¶ 13.    This is not a case, as defendant asserts, where she was stopped because she failed to "follow a perfect vector down the highway or keep[] [her] eye on the road." U.S. v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000) (quoting U.S. v. Gregory, 79 F.3d 973, 978 (10th Cir. 1996). As set forth above, defendant's wheels left the paved portion of the road twice in a short period; this is not merely "failing to follow a perfect vector." The cases cited by defendant involve materially different facts than those at issue here. See Gregory, 79 F.3d at 978 (considering only one "isolated incident of a vehicle crossing into the emergency lane of a roadway"); Freeman, 209 F.3d at 466 (considering "one isolated incident of a [vehicle] partially weaving into the emergency lane" and applying probable cause standard rather than reasonable suspicion standard).

¶ 14.    We also reject defendant's assertion that the officer failed to observe her long enough to generate reasonable suspicion. The short period of time between defendant's car deviating from the paved portion of the road may in fact support—rather than detract from—the conclusion that this was erratic driving. As we have frequently articulated, "[r]easonable suspicion is assessed by examining the totality of the circumstances," not merely the length of time in which those circumstances were observed. Pratt, 2007 VT 68, ¶ 5. We are mindful, moreover, of "the paramount importance of swiftly removing drunk drivers from the roadways of our state because of the imminent danger they pose" to themselves and others. State v. Mara, 2009 VT 96A, ¶ 11, 186 Vt. 389, 987 A.2d 939; see also Boyea, 171 Vt. at 402, 765 A.2d at 863 (noting "imminent risks that a drunk driver poses to himself and the public"); Lamb, 168 Vt. at 199, 720 A.2d at 1104 ("A motor vehicle in the hands of a drunken driver is an instrument of death. . . . [I]t threatens the safety of the public, and that threat must be eliminated as quickly as possible." (quotation omitted)); State v. Santimore, 2009 VT 104, ¶ 7, 186 Vt. 638, 987 A.2d 332 (mem.) ("[W]e have recognized the need to balance the intrusion into a suspect's privacy with the important public-safety need to identify and remove drunk drivers from the roads." (quotation omitted)).

6

¶ 15. Defendant next argues that the officer failed to connect her observations to her training and experience to establish why she believed defendant was impaired. Defendant cites State v. Davis, where the officer "never testified that intra-lane weaving supported a suspicion that defendant might be driving while under the influence." 2007 VT 71, ¶ 9, 182 Vt. 573, 933 A.2d 224 (mem.). In direct contrast, the officer here clearly articulated that she believed that the car leaving the paved portion of the road was not normal driving and was an "indicator of possible impairment." Cf. id. ¶¶ 6, 9 (holding no reasonable suspicion existed where officer observed car moving "laterally within its lane but under expected circumstances under the conditions shown" and "never stated why those observations led him to a reasonable and articulable suspicion that a crime was being committed"(alteration omitted)).[4] The evidence here is sufficient to establish reasonable suspicion to justify the traffic stop under the Fourth Amendment and Article 11. Given our conclusion, we do not address defendant's assertion that no motor vehicle violation occurred.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 16. **COHEN, J., dissenting.** In my opinion, the totality of the circumstances does not support the conclusion that the arresting officer had reasonable suspicion of impaired driving

---

[4] Defendant challenges as clearly erroneous the trial court's finding that the arresting officer "had a number of certifications involving detection of driving under the influence, including the DUI training, the ARIDE training and the DRE training." Factual findings are clearly erroneous when there is no credible evidence in the record to support them. Okemo Mountain, Inc. v. Lysobey, 2005 VT 55, ¶ 8, 178 Vt. 608, 883 A.2d 757 (mem.). That is not the case here. The officer's testimony supports this finding. The officer testified that she had completed all of the training cited above and described that during the DRE training, "[y]ou hear the roadside assessment from the arresting officer. Unless it's yourself, then obviously you're there for it." We conclude that while the trainings may not have been solely focused on motor vehicle violations, it was not clearly erroneous for the trial court to interpret the officer's characterization of these trainings as "involving the detection of driving under the influence."

justifying defendant's traffic stop because the evidence is insufficient to find that defendant was driving erratically. The trial court's factual findings regarding defendant's driving are clearly erroneous. I would reverse the trial court's decision to deny defendant's motion to suppress, and therefore respectfully dissent.

¶ 17. This Court's review of the denial of a motion to suppress is a mixed question of fact and law. "[W]e review a trial court's findings of fact for clear error and its legal conclusions de novo." State v. Sinquell-Gainey, 2022 VT 19, ¶ 14, 216 Vt. 536, 282 A.3d 396. An officer must have reasonable and articulable suspicion of criminal activity to conduct a legal investigatory stop. State v. Bruno, 157 Vt. 6, 11, 595 A.2d 272, 275 (1991). Reasonable suspicion is based on the totality of the circumstances, including whether a car is driving erratically, meaning "wandering" or without "certain course." State v. Pratt, 2007 VT 68, ¶ 5, 182 Vt. 165, 932 A.2d 1039; State v. Boyea, 171 Vt. 401, 410, 765 A.2d 862, 868 (2000) (quoting erratic, Webster's New Int'l Dictionary 869 (2d ed. 1955)).

¶ 18. The trial court concluded that there was reasonable suspicion of impaired driving based on its factual findings that defendant's truck's passenger-side tires left the paved surface of the road twice. These factual findings are based on the arresting officer's testimony, which is contradicted by the video footage from the officer's patrol car. The video shows defendant's car drive straight down a two-lane road for approximately sixteen seconds before the officer activates her blue lights to initiate the traffic stop. The officer testified that she observed defendant's car for only about eighteen seconds in total before engaging her lights. During this brief period, the video does not clearly show defendant's car leave the pavement or weave within the lane. The video does not show erratic driving; defendant's car does not "wander" or drive without "certain course." The trial court acknowledged that "the [c]ourt can't say that it can see in the video that the tires are not on the road, but . . . the [c]ourt can see how the video supports the testimony of

8

the witness." In my view, the court clearly erred in finding that defendant's car left the pavement twice.

¶ 19. Moreover, even if there was slight intra-lane weaving of defendant's car—though this is not clear from the video—it was insufficient to give rise to a reasonable suspicion that defendant was impaired. In Pratt, we held that an officer had reasonable suspicion of impaired driving where he followed the defendant for five miles and watched the defendant drift back and forth within his lane numerous times. 2007 VT 68, ¶¶ 6-7. We declined, however, to create "a 'bright line' rule that intra-lane weaving creates reasonable suspicion to stop in all cases," and "d[id] not quarrel with the point of some of the dissent's cases that slight degrees of intra-lane weaving alone do not justify a stop." Id. ¶ 8. In my view, this is one of those latter cases. The alleged weaving was simply too minimal, and the officer's observation too brief, to support a reasonable suspicion of impairment here. Because the only basis for the stop was suspected impairment,[5] the court should have granted defendant's motion to suppress. I therefore respectfully dissent.

_____

Associate Justice

---

[5] At the motion hearing, the officer did not rely on 23 V.S.A. § 1038(1) when explaining why she pulled over defendant. Likewise, the court did not base its decision on § 1038(1) or rule that there was a violation of it when concluding that there was reasonable suspicion of impaired driving. Thus, the only possible basis for the traffic stop was reasonable suspicion of impaired driving.