*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-202

JANUARY TERM, 2012

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windham Unit, |
| v. | } | Criminal Division |
| | } | |
| William S. Mogerley | } | DOCKET NO. 1676-12-09 Wmcr |

Trial Judge: Karen R. Carroll

In the above-entitled cause, the Clerk will enter:

Defendant appeals pro se from a superior court order denying his motion to suppress certain statements he made. Defendant contends the trial court erred in concluding that he was not in custody at the time he made the statements, and that Miranda warnings were therefore not required, during a police encounter at his home. We affirm.

In December 2009, defendant was charged with possession of one pound or more of marijuana. He moved to suppress the evidence, claiming that the evidence was seized pursuant to a search warrant unsupported by probable cause, and that he was improperly questioned by the police without being advised of his Miranda rights. The court held a hearing on the motion in August 2010, and issued a written decision denying the motion the following month.

As found by the trial court, the material facts surrounding the challenged police encounter, which was captured on a police videotape that served as the central evidence in the suppression hearing, can be summarized as follows. On November 6, 2009, state troopers Vitali and Walker went to an address in Londonderry to locate an individual who was subject to an outstanding arrest warrant. The defendant answered the door, informed the officers that he did not know the person they were seeking, identified himself, and offered to show identification. The officers asked if they could enter the residence while defendant retrieved his wallet, and defendant consented to their waiting in an outer hallway or vestibule.

After defendant returned, and some further conversation, officer Vitali—having detected what he later described as a strong odor of marijuana—asked defendant how much marijuana he had in the house. Defendant initially responded that his best choice was not to say anything, but when pressed as to whether he had a couple of pounds or only a small amount, defendant acknowledged that it was a small amount.

Defendant asked whether he was going to be charged. The officer said he would not know until he found out what defendant had, and advised defendant—who was becoming anxious and upset—to relax and take a deep breath. The officer asked for consent to search the

residence, which defendant refused. After further conversation, defendant indicated that he would like to speak with a lawyer, and the officer asked if defendant had a lawyer he wanted to call, but defendant did not respond. Further conversation ensued in which defendant offered to take the officers to what he had hidden in the house if they would leave, but the officer stated that they needed to search the entire house.

The officers ultimately obtained a search warrant based on officer Vitali's affidavit setting forth the events summarized above, including the smell of marijuana detected by the officer and defendant's admission that there was a small amount of the substance in the house. The officers informed defendant that he could stay outside of the house during the search or could leave. The officers accompanied defendant to his room to change, and he then left the premises. The search revealed more than two pounds of marijuana.

The court rejected defendant's Miranda claim, concluding that he was not in custody at any point during the conversation with the officers. The court found that, while the officers were armed and in uniform, their tone throughout the encounter was calm, polite, and even at times reassuring. Defendant was not handcuffed or otherwise physically restrained, and was allowed to leave during the search. The conversation occurred in the security of defendant's home, rather than the potentially coercive environment of a police station or cruiser. And although the conversation lasted about thirty minutes, the court found that much of it involved the officers' responses to defendant's questions and concerns. Accordingly, the court concluded that, under the totality of the circumstances, defendant was not in custody for Miranda purposes. As for the validity of the warrant, the court found that, while the smell of marijuana might not establish probable cause standing alone, it was sufficient when coupled with defendant's admission that there was a small amount of marijuana in the house. The court therefore denied the motion.

The case proceeded to trial, where defendant chose to represent himself. In his testimony, Office Vitali recounted defendant's acknowledgment of having a small amount of marijuana in the house. The jury returned a verdict of guilty as charged, and defendant was sentenced to zero to one year, all suspended, and placed on probation. This appeal followed.

Defendant's sole contention on appeal is that the trial court erred in concluding that he was not in custody during his conversation with the police at his home. As the trial court correctly observed, the essential question in determining whether a defendant was in custody for Miranda purposes is "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." State v. LeClaire, 2003 VT 4, ¶ 16, 175 Vt. 52 (quotation omitted). Under this standard, we "must make an objective inquiry into the totality of the circumstances to determine if a reasonable person would believe he or she were free to leave or to refuse to answer police questioning." Id. (quotation omitted). In resolving the issue, we "look for situations approximating incommunicado interrogation of individuals in a police-dominated atmosphere." State v. Pontbriand, 2005 VT 20, ¶ 11, 178 Vt. 120 (quotations omitted). We thus consider, among other factors, the location of the interview and whether it was inherently coercive, whether the defendant was restrained or intimidated in any way, the extent to which the defendant was confronted with evidence of guilt, and the duration of the interview. State v. Muntean, 2010 VT 88, ¶ 19. In reviewing the trial court's ruling, we will uphold its findings of fact unless clearly erroneous, but independently assess the ultimate

2

conclusion as to whether or not the facts establish that the interview was custodial in nature.  Id.
¶ 20.

Although the encounter here was fairly lengthy, the principal incriminating statement from the conversation included in the search-warrant affidavit and later admitted at trial was defendant's admission that he had a small amount of marijuana in the house.  This occurred within the first five minutes of the conversation.  For the purposes of this appeal, we accordingly focus on the period preceding defendant's admission that gave rise to probable cause to support the search warrant.  From that perspective, the duration of the encounter was relatively brief.  Defendant asserts, nevertheless, that the encounter immediately became coercive and custodial when the officer asked him whether he was in possession of marijuana, asserting that the situation was comparable to that in State v. Sole, 2009 VT 24, 185 Vt. 504.   There, we concluded that a routine traffic stop escalated to an in-custody interrogation when the officer, detecting a strong smell of marijuana, transferred the defendant to his police cruiser, questioned him about the possession of marijuana, and told him that "he would not be released until the trooper determined if there was anything illegal in the car."  Id. ¶ 3.  We explained that, "[f]rom an objective standpoint, this new line of questioning, in combination with defendant's extended detention inside the cruiser and the trooper's stated intent not to let defendant leave until he investigated the smell of marijuana in the car, turned what might have remained a simple roadside inquiry . . . into an interrogation under circumstances approximating arrest."  Id. ¶ 18.

The trial court here correctly distinguished Sole, observing that defendant was not in an isolated cruiser on the side of a road but in his own home, and he was never told that he could not leave.  We do not reach the question of whether the officers' later statements that they could not simply "walk away" and that they would remain with defendant while waiting for the search warrant would suggest to a reasonable person that he or she was not free to leave.  Defendant's admission preceded these statements, and we thus discern no basis to suppress it.  Nor did the admission render the encounter custodial per se.  See State v. Oney, 2009 VT 116, ¶ 14, 187 Vt. 56 ("A noncustodial situation does not become custodial automatically because the interviewee has confessed to a crime.").  Nor finally, did defendant's early comment that his "best choice" was not to say anything, even if broadly construed as an invocation of his right to remain silent or request for a lawyer, require Miranda warnings where—as here—the circumstances were otherwise noncustodial.  See Pontbriand, 2005 VT 20, ¶ 10 (noting that Miranda requirement that police stop questioning suspect who requests attorney does not apply where the suspect is not in custody).  Although defendant also claims that in its findings the trial court overlooked or mischaracterized certain remarks on the videotape, none of the alleged errors relates to the essential findings or the conclusion that defendant was not in custody when he admitted having a small amount of marijuana in the house.  Accordingly, we discern no basis to disturb the judgment.

Affirmed.

3

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Brian L. Burgess, Associate Justice


_____
Beth Robinson, Associate Justice